Argued February 24, reversed and judgment directed March 23, rehearing denied April 20, 1926.

## FOREST PRODUCTS CO., INC., v. DANT & RUSSELL, INC.

(244 Pac. 531.)

**Sales—Special Verdict That Contract Alleged in First Cause of Action was not Made Held not Inconsistent With General Verdict on Contract Alleged in Second Cause of Action, and Refusing Judgment on General Verdict was Error.** ·

1.  In action for breach of contract, special verdict that contract for one hundred cars of veneer, alleged in first cause of action was not made, *held* not inconsistent with general verdict for plaintiff on its second cause of action alleging contract for sale of fifty carloads of veneer, and trial court's action in refusing judgment on general verdict was erroneous.

**Trial.**

2.  Separate findings on each of two issues presenting separate causes of action are not special, but general, verdicts.

Trial.

3. Verdict for both plaintiff and defendant is not necessarily inconsistent, if separate findings are on causes of action severally pleaded.

Trial.

4. Special finding is inconsistent with general verdict, when as matter of law it authorizes different judgment.

Trial—Special Findings on Material Issues Inconsistent With General Verdict and Irreconcilable Control General Verdict, if Sufficient to Authorize Judgment When Taken With Facts Admitted by Pleadings.

5. Special findings so inconsistent with, and antagonistic to, general verdict as to be absolutely irreconcilable, control general verdict, if special findings are on material, substantial issues, and sufficient to authorize judgment when taken together with facts admitted by pleadings.

Trial—Every Reasonable Intendment in Favor of General Verdict Should be Indulged, and General Verdict will Stand, Unless Answers to Special Interrogatories are Clearly Antagonistic and Irreconcilable.

6. No presumption will be indulged in favor of answers of jury to special interrogatories as against general verdict, and every reasonable intendment in favor of general verdict should be indulged, and general verdict will stand, unless facts found in answer to special interrogatories are clearly antagonistic and irreconcilable.

Trial.

7. Special verdicts must be construed with view of ascertaining intention of jury and to uphold general verdict.

Trial—Special Verdict is Construed Against Party on Whom Rests Burden of Proof, and Special Finding Against Party in Whose Favor It is Found.

8. Special verdict will be construed most strongly on whom rests burden of proof, and special finding received without objection most strongly against party in whose favor it was found.

Sales—Evidence Held to Show Contract for Fifty-carload Lot of Veneer had Been Made and Contract for Second Fifty-carload Lot Left for Future Determination.

9. In action for breach of contract for sale of two fifty-carload lots of veneer, denied having been made by defendant, evidence *held* to show that first fifty-carload lot had been contracted for, but that second lot had been left for future determination.

---

4. See 27 R. C. L. 879.
7. See 27 R. C. L. 887.

Sales—Measure of Damages for Breach of Contract by Counter-
manding Order for Goods to be Manufactured is Difference
Between Cost and Contract Price, With Reasonable Deduction
for Release of Risk and Responsibility Attendant on Execution.

10. Measure of damages for breach of contract by buyer in
countermanding order for goods to be manufactured, in case noth-
ing has been done in special preparation for manufacture, is cost
of manufacture or production and price to be paid under contract,
with reasonable deduction for release from risk and responsibility
attendant upon execution.

Appeal and Error—Supreme Court will Direct Rendition of Judg-
ment in Accordance With General Verdict, Where Trial Court
had Erroneously Held General Verdict Inconsistent With Spe-
cial Verdict, and Refused Judgment (Const., Art. VII, § 3c).

11. Under Constitution, Article VII, Section 3c, Supreme Court
will direct rendition of judgment in accordance with verdict of jury,
where trial court had erroneously held such verdict inconsistent with
special verdict.

---

Appeal and Error, 4 C. J., p. 650, n. 37, p. 1187, n. 88.
Damages, 17 C. J., p. 788, n. 70, p. 790, n. 72, p. 792, n. 76, p. 793,
n. 81.
Sales, 35 Cyc., p. 584, n. 58, p. 591, n. 38, p. 595, n. 75.
Trial, 38 Cyc., p. 1869, n. 91, p. 1886, n. 8, p. 1927, n. 81, 82, 83,
p. 1928, n. 86, 88, 90, 91, 92, p. 1929, n. 93, 94, p. 1930, n. 95, 96,
98, 99, 1, 3, 5, 6.

From Multnomah: JOHN S. COKE, Judge.

Department 2.

This is an action for damages for breach of con-
tract. The complaint consists of four alleged causes
of action. The cause was tried by the court and a
jury. The jury returned three verdicts. First, a
special verdict: "Did plaintiff and defendant enter
into a contract as set forth in the complaint in the
first cause of action? We answer no." Second: "A
general verdict for plaintiff on its second cause of
action in the sum of $10,450." Third: "A general

---

10. Measure of damages for purchaser's refusal to accept goods
specially manufactured for him, see notes in 4 L. R. A. (N. S.) 740;
18 L. R. A. (N. S.) 613. See, also, 24 R. C. L. 117.

verdict in favor of defendant upon its counterclaim in the sum of $8,000."

The jury also found a verdict in favor of defendant on the third and fourth causes of action set forth in the complaint. Both parties moved for judgment on the verdict.

The Circuit Court, deeming the special verdict inconsistent with the general verdict for plaintiff on its second cause of action in the sum of $10,450, refused judgment on the general verdict for plaintiff on this cause of action; and rendered judgment in favor of defendant on its counterclaim for $8,000. Plaintiff appeals.

Reversed and Judgment Directed. Rehearing Denied.

For appellant there was a brief over the name of *Mr. F. E. Grigsby,* with an oral argument by *Mr. W. C. Bristol.*

For respondent there was a brief over the name of *Messrs. Joseph, Haney, Holmes & Littlefield,* with an oral argument by *Mr. E. V. Littlefield.*

BEAN, J.—The first cause of action was based upon a breach of an alleged contract, and plaintiff claims damages for the following sums expended in the improvement of its plant and machinery for the manufacture of veneers; namely, for labor, superintendence, engineering and overhead, $18,500; materials, lumber, findings and fixtures for kilns, yard and mill, $12,850; for boiler, motor and fan, $3,300; for wires and clips for kilns, $1,000; aggregating $43,150 demanded on the first cause of action.

In the second cause of action plaintiff claims a contract for the sale of fifty carloads of veneer, and

that the defendant breached the contract to its damage in the sum of $34,375.

Upon the third cause of action plaintiff claims that there was a contract in existence for the second fifty-carload lot of veneers and that the defendant breached the contract to plaintiff's damage in the sum of $34,375.

Upon the fourth cause of action the plaintiff claims that the defendant prevented plaintiff from completing a contract, which it had with the Haskelite Manufacturing Corporation for the sale of veneer, and that defendant failed and refused to take "fall-down" material that accrued in the performance in the Haskelite contract, and that plaintiff was thereby damaged in the sum of $14,000.

The defendant denies most of the allegations of plaintiff's complaint, particularly that in regard to the contract alleged in the first cause of action, and sets forth a counterclaim to recover from the appellant the sum of $8,000, on account of a loan made to plaintiff.

The complaint in this case is very lengthy, consisting of some thirty-four pages of printed matter. It appears from the record that the plaintiff was operating a small mill near Linnton, Oregon, manufacturing veneer. Some of its products, which are not involved in this case, were sold to the defendant, and there were negotiations or plans between the plaintiff and the defendant looking toward the transaction of future business, and defendant encouraged plaintiff to enlarge its plant and construct dry kilns. It had formerly been air-drying its material. Defendant, in order to assist plaintiff to improve its plant, loaned plaintiff $8,000; $5,000 of which was advanced August

30, 1920, and $3,000 advanced September 30th of that year.

Defendant was exporting Pacific Coast lumber and veneer and there were negotiations looking toward defendants taking all of the manufactured veneer from plaintiff's mill. Plaintiff in its first alleged cause of action alleged among other things—

"The defendant agreed to and did help plaintiff and advanced to plaintiff money in the aggregate amount of eight thousand ($8,000), to be repaid out of one hundred (100) or more cars of manufactured veneer to be produced by plaintiff so that plaintiff could repay said eight thousand dollars ($8,000) at the rate of eighty dollars ($80) per car thereof in fifty (50) carlots or quantities for defendant. * * "

It is the contention of plaintiff that the defendants agreed to purchase all of the veneer manufactured at its mill up to a hundred or more carloads. That on account of the refusal of the defendant so to do it is liable for the whole cost of improving the plant of plaintiff, as itemized above.

The jury, by its special verdict, found that there was no contract made between plaintiff and defendant, as alleged in plaintiff's first cause of action. According to the testimony we do not see how the jury could have found otherwise.

The second cause of action, set forth in plaintiff's complaint, is based upon a different foundation. After alleging in regard to the general manner of running the business and some matters of inducement, it is alleged that on the twenty-eighth day of August, 1920, the defendant gave plaintiff its certain writings in words and figures, set forth in the complaint, the first of which consists of a letter which reads in part as follows:

"Portland, Oregon, 8/28/20.
"Forest Products Co.,
   "City.
"Gentlemen:
   "We are enclosing herewith our order No. 688–B–2, for 50 carloads fir, spruce and hemlock, wire-bound box veneer, log-run. This stock is to be shipped kiln dried, within four months.
   "It is also understood that we are to get all of the wire-bound box veneer that you will manufacture during the period it is necessary for you to ship this stock. * * [Here follows some directions as to manufacturing and kind of material.]
                    "Yours truly,
                         "Dant & Russell, Inc.,
                    "By Glen W. Cheney (Signed).
"GWC/PL.
"Accepted:
                    "Forest Products Co.,
                    "By R. L. Rankin (Signed)."

The order No. 688–B–2 dated at Portland, Oregon, August 28, 1920, accompanying this letter, directs "Forest Products Co. ship to National Box Co., Chicago, Ill. * * 50 car-load rotary cut veneer (Fir, Spruce and Hemlock)." The order continues to specify the prices per thousand, surface feet and dimensions of the material and other details and was signed by the defendant "Dant & Russell, Inc. per Glen W. Cheney." It was accepted by "Forest Products Co., by R. L. Rankin, Vice-pres. Mgr."

It is further alleged in the complaint, that on October 19, 1920, the defendant wrote to the plaintiff, to the effect, that on account of business conditions "until further advice would ask that you defer shipment on any wire-bound box veneer until further notice." Defendant further stated that it was working on several new prospective customers, and it might be

that they could induce them to start taking some of this stock quickly; in which case they would advise plaintiff. The plaintiff then alleges as follows:

"And after said letter was received by plaintiff, and defendant had so notified plaintiff aforesaid in writing, notified plaintiff to desist therefrom until further notice and suspended all performance under said contract, and defendant failed and neglected to perform and delayed, deferred and put off from time to time any performance whatever upon its part to and until on or about the 1st day of June, 1921, when the defendant refused to perform in any way whatever, * *

"That had defendant taken delivery as contracted of said (50) car loads of fir, spruce and hemlock wirebound box veneer, log run, pursuant to said contract, plaintiff would have earned, over and above the cost of production and delivery to and for defendant, six hundred eighty-seven and 50/100 dollars ($687.50) for each car thereof and plaintiff's actual profits would have been on said fifty (50) car loads of said veneer as specified, thirty-four thousand three hundred and seventy-five dollars ($34,375).

"That the conduct, acts and doings of defendant hereinbefore set forth have caused plaintiff damage and defendant in so conducting, acting and doing the things aforesaid has and did damage the plaintiff in the sum of thirty-four thousand three hundred and seventy-five dollars ($34,375), profits plaintiff would have realized by performing said contract had defendant allowed it to do so; that none of said damage has been paid, satisfied or discharged by defendant unless it be that defendant can lawfully apply or credit the aforesaid advance of eight thousand dollars ($8,000) thereon and if defendant should so claim then there is remaining unpaid, unsatisfied and not discharged of plaintiff's said damage the sum of twenty-six thousand three hundred and seventy-five dollars ($26,375) and this sum defendant refuses to pay or to pay, any damage whatever at all, although

plaintiff has in writing demanded that the defendant compensate plaintiff before bringing this action and defendant has refused so to do.''

Upon this second cause of action, the jury returned a verdict in favor of plaintiff and against defendant for $10,450.

The contract mentioned in the second cause of action for fifty carloads of veneer is not the contract relied upon in the first alleged cause of action which the jury by its special verdict found was not entered into.

1. Plaintiff assigns error in the entry of judgment on the verdict. The special verdict is not inconsistent with the general verdict for plaintiff on its second cause of action. It was, therefore, error for the court to so hold and to render judgment accordingly. The verdict of the jury plainly finds in favor of plaintiff in the sum of $10,450, upon the second cause of action, and in favor of defendant upon its counterclaim, in the sum of $8,000, or for a balance in favor of plaintiff of a verdict for $2,450. 27 R. C. L., page 855, Section 27, states, in effect, that ordinarily it is better practice where different causes of action are joined in one action for the jury to find a separate verdict as to each cause.

2, 3. Separate findings upon each of two issues presenting separate causes of action are not special but general verdicts: *Robinson* v. *Berkey,* 100 Iowa, 136, 143 (69 N. W. 434, 62 Am. St. Rep. 549). A verdict for both plaintiff and defendant is not necessarily inconsistent, if the separate findings are on causes of action severally pleaded by them respectively: 38 Cyc. 1927.

4–6. A special finding is inconsistent with the general verdict, when as a matter of law it authorizes a

different judgment from that which the general verdict will authorize. Special findings so inconsistent with, and antagonistic to, the general verdict as to be absolutely irreconcilable with it, control the general verdict. To control the general verdict the special findings must be upon a substantial, material issue and must in all other ways be sufficient to authorize a judgment thereon when taken together with facts admitted by the pleadings. Notwithstanding the jury may find a special verdict for one party on certain questions, judgment may be rendered for the other party on a general verdict found in his favor, when there is any issue in the case not covered by the special findings. No presumption will be indulged in favor of answers of the jury to special interrogatories as against the general verdict; but, on the contrary, every reasonable intendment in favor of the general verdict should be indulged, and all parts of the verdict are to be reconciled in support thereof if it can reasonably be done. Hence, the general verdict will stand unless the facts found by the jury in answer to special interrogatories are so clearly antagonistic to it as to be absolutely irreconcilable, so that both the general verdict and the special findings cannot stand. In determining the force of the interrogatories nothing but the pleadings, the verdict and the answers can be considered, and no regard will be paid to answers of the jury with reference to immaterial matters or mere conclusions: 38 Cyc. 1927 et seq.

7, 8. Special verdicts must be construed liberally with a view of ascertaining the intention of the jury, and answers returned by a jury to interrogatories addressed to them, if possible, are to be so construed as to uphold the general verdict. A special verdict

will be construed most strongly against the party upon whom rests the burden of proof, and a special finding received without objection most strongly against the party in whose favor it is found: 38 Cyc. 1930, par. 9; *Grant v. Spokane Tract. Co.*, 47 Wash. 112 (91 Pac. 553).

The special verdict of the jury disposed of the allegations contained in the so-called first cause of action in a way convenient for the trial court and determined nothing else. The jury also found a general verdict for defendant upon the first cause of action alleged in the complaint. It is extremely difficult, if not impossible, to find alleged in the first cause of action a contract whereby it was agreed between plaintiff and defendant that defendant would purchase all of the veneer manufactured at plaintiff's mill for a specified time, up to one hundred cars "or more" of veneer, as claimed by plaintiff. The contract alleged in the second cause of action for the sale of fifty carloads of veneer by plaintiff to defendant is plain, definite and wholly independent of the allegations contained in the first cause of action, except, in so far as paragraphs I to V thereof, are adopted as a part of the second cause of action.

Mr. Claud McColloch, an officer of the plaintiff corporation, as a witness for plaintiff, explained the matters set forth in the first cause of action, and also testified in regard to the fifty carload contract and order as follows:

"We were to put in dry kilns and otherwise improve our plant so as to provide a capacity of three cars per week of wire bound box material. They were to give us an order, taking the capacity of our plant at that rate of three cars per week of wire bound box material, and the talk was first up to 150 cars, and they cut it down to 100 cars—Mr. Cheney I

mean—and they were to advance $8,000 towards the expense of putting in the dry kilns, and we were to provide the other necessary funds ourselves, and finally when it came to writing up the order, just about the time this order was written up, business conditions were unsettled by an increase of freight rates to eastern points and Mr. Cheney said on account of the unsettling effect—possible unsettling effect—the thing was very much just in its beginning then—that he was only going to write up fifty cars at that time specifically, and I told him alright, but made it very plain to him that it was understood that we were to manufacture and were selling and they were to buy a hundred car loads, and the $8,000 to be advanced by them was to be repaid back spread over a hundred cars at the rate of $80 per car."

On cross-examination, he states, in part, thus:

"We were to furnish Dant & Russell a hundred cars of wire bound material, and we were to get ourselves in position to give it to them at the rate of three cars per week, kiln dried, * * Fifty cars of the hundred cars was written down in this letter and memorandum and the reference to Haskelite of August 28. The other fifty cars Cheney was unwilling to write down at that time, so he said, * * and the price was to be agreed on mutually satisfactory when it came time to run out the second fifty, after we had finished the first fifty car written order."

9. This testimony plainly shows that the second fifty carload lot was never agreed upon by the parties, but was left for future determination by them. But it does indicate that there was a contract for the first fifty carloads of veneer, as alleged in plaintiff's second cause of action.

We do not understand that the defendant disputes the arrangement by the letter and order of August 28, 1920, contracting for fifty carloads of plaintiff's veneer. In defendant's brief we read thus:

"The evidence shows that there was some conversation at various times between the various officers of the Forest Products Company and Mr. Cheney and Mr. Singer, but the evidence conclusively shows that no valid contract, except the writings hereinabove set forth, *were* ever entered into."

We understand the exception to refer to the letter and order of defendant of August 28, 1920.

Defendant contends that:

"A special verdict was signed unanimously by the jury holding that there was no contract between the plaintiff and the defendant."

As we have already noted, and as the special and general verdict show, the jury did not find that there was no contract between plaintiff and defendant, as alleged in plaintiff's second cause of action, and as indicated by the testimony, neither do we see how, under the admitted facts and the testimony in the case, the jury could reasonably so find.

10. But the defendant argues, in effect, that in order for the defendant to be liable for countermanding the order for fifty carloads of wire-bound box veneer, the plaintiff should have manufactured the veneer and tendered the same to defendant. Where the breach of a contract by the buyer is the countermand of an order for goods to be manufactured, which justifies the seller in suspending the further manufacture, the measure of damages is, in case nothing has been done in special preparation for their manufacture or production, the difference between the cost of manufacture or production and the price to be paid according to the terms of the contract. Where the buyer repudiates the contract before manufacture has been completed, the test of the cost of manufacture is almost universally adopted. This rule should

be subject to the qualification that a reasonable deduction is to be made for the less amount of time required by the manufacturer, his employees, and the factory and for the release from trouble, risk and responsibility attendant on a full execution of the contract on his part: 24 R. C. L., p. 118, § 388; 2 Williston on Sales (2 ed.), p. 1438, § 583A.

In *Roehm* v. *Horst,* 178 U. S. 1 (44 L. Ed. 953, 20 Sup. Ct. Rep. 780, see, also, Rose's U. S. Notes), the syllabus reads thus:

"As to the question of damages, when the action is not premature, the plaintiff is entitled to compensation based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself."

In *Feeney & Bremer Co.* v. *Stone,* 89 Or. 360, at page 370 (171 Pac. 569, 174 Pac. 152), Mr. Justice Harris records the following language:

"The theory of the law is to award compensation for gains prevented and for losses sustained. The party who is damaged by the breach of a contract is not prevented from recovering anticipated profits merely because they are such. If it is reasonably certain that the breach of a contract has deprived the complaining party of a profit which was contemplated or can reasonably be presumed to have been contemplated by the parties at the time the contract was made then the party committing the breach is liable for the loss of the profit: *Drake* v. *Sears,* 8 Or. 209, 214; *Hoskins* v. *Scott,* 52 Or. 271, 276 (96 Pac. 1112); *Fields* v. *Western Union Tel. Co.,* 68 Or. 209 (137 Pac. 200); *McGinnis* v. *Studebaker Corp.,* 75 Or. 519, 522 (146 Pac. 825, 147 Pac. 525, Ann. Cas. 1917B, 1190, L. R. A. 1916B, 868)."

The testimony is all contained in the record.

Section 3c of Article VII of the Constitution of Oregon provides:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court."

11. Our conclusion renders it unnecessary to consider the other assignments of error.

After a careful examination of the record we think the judgment should be changed and that one should be rendered in favor of plaintiff and against defendant on the general verdict for plaintiff on the second cause of action in the sum of $10,450, less the general verdict in favor of defendant upon its counterclaim in the sum of $8,000, or for the sum of $2,450, with interest at 6 per cent per annum from April 26, 1922.

The judgment of the lower court is reversed and one directed to be entered in accordance herewith.

REVERSED WITH DIRECTIONS.   REHEARING DENIED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.