No. 27,881.

Ray Shideler, *Appellee*, v. The Capital Gas and Electric Company, *Appellant*.

(266 Pac. 741.)

Opinion filed May 5, 1928.

*Fred S. Jackson, P. H. Forbes, James E. Smith, H. A. Russell,* all of Topeka, and *Robert D. Garver,* of Kansas City, Mo., for the appellant.

*W. Glenn Hamilton,* of Topeka, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover for damages to a house owned by the plaintiff, caused by an explosion of gas in the basement. The plaintiff prevailed and defendant appeals. The principal question presented is whether there was sufficient evidence to sustain the verdict and judgment.

The facts are substantially these: Plaintiff's house, located at 1128 Woodward avenue, was occupied by M. S. Davis and his family. The defendant supplied gas to the house through a service pipe which entered through the basement wall and connected with a meter which was hung just inside, suspended from the service (intake) pipe and the (outlet) pipe connected with the fixtures in the house. Mrs. Davis was engaged in preparing the noon meal on May 10, 1926, on a gas range located in the kitchen. Mr. Davis was doing some work on his automobile outside the house, and needing something that was in a cupboard in the basement, went to the cupboard and struck a match. An explosion resulted which injured him and damaged the house. It was contended by plaintiff that there was a leak in the meter where it joined the pipe; that the meter showed that a soldered joint was defective; that the condition of the soldering and the location of a spot of paint within the joint between the solder and the pipe showed that there had been a de-

fective attempt at soldering. The jury answered special questions as follows:

"1. Was the meter defective when installed? A. Yes.

"2. If you answer preceding question in the affirmative, did the defendant know at the time the meter was installed that it was defective? A. No.

"3. If you answer question 1 in the affirmative, was the condition of the meter such at the time it was installed that defendant, by the exercise of ordinary care, should have known that it was unsafe and defective? A. Yes.

"7. If the meter was defective when installed or if it afterwards became so, in what respect was it defective? A. Defective soldered joint on outlet of meter.

"8. If you find that the meter was defective when installed or became so later, was such defect the proximate cause of the explosion? A. Yes.

"9. When was the meter last inspected prior to the explosion? A. September, 1925."

The defendant contends that there was no evidence to support the findings; that the findings are the result merely of building inference on inference. We think not. After the explosion, employees of the gas company immediately went to the house and found the meter melted from the supporting pipes and lying on the basement floor. They immediately took it from the basement and placed it in a (defendant) company automobile. A controversy arose as to the right of defendant's employees to remove the meter. This was settled by all parties agreeing that it should be placed in possession of T. H. Bruce and kept by him in its then condition until released by agreement of the parties. It was an ordinary gas meter about fifteen inches high, ten inches across and six inches deep, made of tin plate and soldered. The joint where the outlet pipe was soldered to the meter was made by the outlet pipe fitting into a metal socket or nipple extending about an inch above the meter and making a complete cylinder about an inch in diameter except for about one-fourth of the circumference, that is to say, the nipple into which the pipe fitted was not a complete cylinder by about one-fourth. The pipe was set into this nipple and that part of the nipple where the metal did not complete the cylinder was soldered across. This strip of soldering was about three-fourths of an inch long. When found on the floor of the basement the paint on the top of the meter was scorched and burned. On the inside of the unmelted solder between the solder and the outlet pipe fitting into the joint was the paint spot above mentioned.

Defendant's witnesses testified that there could have been no paint in the joint because when tightly soldered up, as should have been done before painting, no paint could run through. The plaintiff argues "that the converse would follow: since paint was there, the joint must not have been tightly soldered . . . that the condition of the soldering and the location of the paint at a place within the joint clearly showed that it was a defective attempt at soldering." A witness for defendant (Hancock) stated that it was possible for the paint to have run through the joint if it had been defectively soldered. There was evidence that the meter was not new, that is, it had been previously used, and that the defendant repaired, soldered and painted its meters. A reasonable inference is that if the joint had been properly soldered it would have been impossible for any paint to have gotten where this paint spot was found. It was practically conceded that there was gas in the basement and that nothing else caused the explosion. The gas must necessarily have escaped through some leak. We are of opinion the evidence and fair inferences to be drawn therefrom were sufficient to warrant the finding of the jury that the meter was defective in this joint. It follows that if the joint was sufficiently defective to permit paint to run through, it was sufficiently defective to permit gas to leak out.

Complaint that error was committed in overruling a demurrer to plaintiff's evidence cannot be sustained. If there was a question of the insufficiency of plaintiff's evidence (which it is not necessary to decide), it was cured by evidence introduced by the defendant. (*Hospital Co. v. Odd Fellows*, 99 Kan. 488, 162 Pac. 302; *Firstenberger v. McBee*, 113 Kan. 110, 213 Pac. 813.)

While the facts and circumstances are very close to the border line we are unable to say as a matter of law that there was no evidence to sustain the findings and judgment.

The judgment is affirmed.