Argued December 1, 1932; affirmed January 10; rehearing denied
February 14, 1933

APPLEGATE *v.* PORTLAND GAS & COKE CO.

(18 P. (2d) 211)

*Irving Rand,* of Portland (John A. Laing and Henry S. Gray, both of Portland, on the brief), for appellant.

*Henry E. Collier* and *Earl F. Bernard,* both of Portland (Collier, Collier & Bernard, of Portland, on the brief), for respondent.

BELT, J. This is an action to recover damages for personal injuries sustained by reason of having inhaled illuminating gas which it is alleged the defendant carelessly and negligently permitted to escape as a result of a loose connection between service pipe and gas meter. The meter was installed by defendant in the basement of an apartment house leased by the plaintiff, directly under the room in which the latter slept.

It is alleged in the complaint:

"That the defendant carelessly and negligently failed and neglected to keep its said meter and the connections thereof in proper condition and repair and failed and neglected to properly, or at all, secure or fasten said meter by means of straps around the same, and fasten to the wall, or otherwise secure the same, so as to hold said meter secure and in a position so as to prevent its falling or its connections becoming loose, disconnected or out of repair".

Plaintiff alleged that, as a proximate result of the negligence of the defendant, he was seriously and permanently injured and by reason thereof demanded judgment in the sum of $11,000.

Defendant in its answer admitted that it "owned, installed, cared for, and supervised" the meter and service pipes in question. It denied the negligence as averred in the complaint and alleged affirmatively that the meter and pipes were installed by it in "a proper, safe, and efficient condition so that no escape or leakage of gas therefrom was likely to or did occur from any defective condition thereof over which defendant had any control, or for which defendant was or is in anywise responsible or liable".

It is also alleged in substance by defendant that plaintiff had full charge and control over the premises in which the meter and service pipes were located, and that if the meter and connecting pipes were in such defective condition as to permit the leakage of gas, it was due to the negligent interference with the same by plaintiff or by persons under his supervision. Finally it is averred that any injuries plaintiff may have sustained were the result of his sole negligence.

The affirmative matter of the answer was denied in the reply.

On the issues thus briefly stated, the cause was submitted to a jury and a verdict returned in favor of the plaintiff for $5,000. Defendant appeals.

■■ The most serious question is whether there is any evidence to support the charge of negligence against the defendant company. While it is well established that a gas company is not an insurer of the safety of its pipes or meter connections (see note 25 A. L. R. 265), it is incumbent upon those who deal with such

dangerous commodities to exercise care commensurate with the danger involved: *Sharkey v. Portland Gas Co.*, 74 Or. 327 (144 P. 1152, 145 P. 660); 28 C. J. 591. A gas company is required not only to exercise reasonable care in the installation of its gas pipes and meters so that no gas will escape therefrom, but it is duty bound to keep and maintain its system in a reasonably safe condition: *Castner v. Tacoma Gas & Fuel Co.*, 123 Wash. 236 (212 P. 283). It is said in *Helm v. Manufacturers Light & Heat Company*, 86 W. Va. 628 (104 S. E. 59, 25 A. L. R. 240):

"As the meter and its connections were furnished, installed, and maintained by the defendant, and the plaintiffs had no right to molest or interfere with it, we are of the opinion that the duties of proper installation, maintenance, and inspection of it, and the selection of safe and suitable fittings for connection thereof with the service pipes, rested upon the defendant".

■ In the instant case it is not asserted that the defendant failed to make reasonable inspection of the meter and its connections. Neither is it contended that the company had any notice or knowledge of gas leakage prior to time of injury. Where reasonable care has been exercised in the installation and inspection of service pipes or meters located upon premises under control of the consumer, the company is not liable for leakage of gas unless, after having been notified of such dangerous condition, it is negligent in making suitable repairs or turning off the gas: *Anderson v. Atlantic City Gas Co.*, 7 N. J. Misc. 297, 145 Atl. 238; *Ingledue v. Davidson*, 102 Cal. App. 703 (283 P. 840); *Cracraft v. Wichita Gas. Co.*, 127 Kan. 741 (275 P. 164). If, however, the meter or service pipes were improperly or carelessly installed, the liability of the defendant

company would not depend upon notice of defective condition. Under such circumstances, the company would be bound reasonably to anticipate that injury might result: 12 R. C. L. 909. As stated in 28 C. J. 593:

"If leaks or defects in the company's pipes occur because of faulty construction or otherwise through the company's fault, it is liable without notice for any resulting injury to person or property".

The rule is thus stated in *Messmer v. St. Louis County Gas Co.* (Mo.), 42 S. W. (2d) 963:

"* * * that as to notice, where it appears that the company has exercised due diligence in inspecting its pipes for defects therein, and such breaks or defects as are found are to be attributed, not to its own negligence, but to the fault of others, or to natural causes, it is not to be held liable until it has been given notice, and a reasonable time to make repairs; that, on the other hand, if it is shown that the leaks or defects have occurred in its pipes because of their faulty construction, or for any other reason for which the company is to blame, then it is to be held liable, without notice, for the resulting injury; * * *"

Since plaintiff was in control of the premises upon which the meter in question was located and the plaintiff has undertaken specifically to point out the cause of the leakage, the doctrine of res ipsa loquitur has no application: *Gerdes v. Pacific Gas & Electric Co.* (Cal.), 13 P. (2d) 393; *A. & J. Inc. v. Southern Cities Distributing Co.*, 173 La. 1051 (139 So. 477); *National Sheet Metal Roofing Co. v. New York Tel. Co.*, 5 N. J. Misc. 503 (137 Atl. 409). The mere leakage of gas did not of itself create any presumption of negligence. There is no analogy between the case at bar and that of *Sharkey v. Portland Gas Co.*, supra, as in the latter case the pipes

from which the gas leaked were in the street and under the exclusive control of the gas company. What was said there relative to res ipsa loquitur must be read in the light of the facts under consideration. Neither should the instant case be confused with those where gas has been permitted to escape from gas mains in streets to adjoining buildings. Here the leakage occurred on the premises leased by the plaintiff.

 In view of the above legal principles and of the record before us, it is clear that whatever right plaintiff has to recover is based upon careless and improper installation of the meter and connecting pipes. There is no question as to plaintiff's being injured by the leakage of gas from the meter. There is a dispute as to what caused the loose connection. Was it due to faulty construction? Or was the connecting pipe loosened by the act of some person for whom the defendant was not responsible? Let us turn to the record.

Mr. Kronberg, who went directly to the basement after it was learned that the plaintiff had become asphyxiated, thus testified in reference to the meter:

"The meter had fallen away from the pipe. The sweat joint or the sleeve; there is a sleeve that fits right down into the meter, alongside the meter, and the meter had pulled away from this pipe, and left the pipe wide open. * * * The meter had no strapping; the meter hung from pipes; just the support of the pipes. * * * the meter not being strapped on, it naturally fell away, dropped away from this pipe; that was the result. If the meter had been strapped up, straps had been around this meter to the joist, this meter would have had no chance to drop away or slip away from this pipe, the way that occurred that this meter had dropped away from this sleeve or sweat joint".

He also testified without objection to a conversation had with one of the employees of the gas company who had been sent to examine the meter immediately after the injury occurred. Kronberg said that in this conversation the representative of the company told him that "by all means that meter should have been strapped up" and that "he didn't understand why the party that put in the meter—why the meter wasn't strapped up".

E. E. Fisher, a fireman who had been sent to revive plaintiff from asphyxiation, testified about the loose connection of the pipes with the meter as follows:

"This union connection where the pipes are fastened on to one side of the meter, that was loose enough that I could tighten it up with a pair of pliers I had".

On cross-examination, in response to the question: "Was the joint loose?" the witness answered:

"Loose enough so I noticed it when I took hold of the meter and kind of shook it; it was loose enough to shake; that was what called my attention to it. * * *"

Testifying further in reference to the meter, he said:

"The meter was swung up on the pipes. Was no iron bands around the meter, and hung up to the joist underneath it, and there was no pipe straps around the pipe and nailed into the joist".

On redirect examination, in response to the question, "is it customary or usual for them to be so strapped?" the witness answered:

"Well, as to that I don't know whether it is customary, but I know it is strapped in my own basement, and every place I ever knew about it, were on. * * * To keep it from coming down and breaking the pipes down, or anything like that".

The house in which plaintiff lived was about eight or ten feet from a fire station in which were located heavy fire trucks, one of which weighed about fifteen tons. The testimony of this witness relative to the probability of these moving trucks having caused the loosening of the meter as a result of vibration was not definite or specific, as is disclosed by the following portion of the record:

"Q. Could you give the jury any idea as to whether or not such apparatus as that going in and out of a place and around the street there would cause the vibration of that house meter?

"A. About up there, I wouldn't say as to up there; but the station I am in, down here on Fourth and Taylor, we get the vibration of the trucks up and down Fourth Street in our house there; shakes our place when they cross the street there day and night.

"Q. And if the meter had straps on it, say around the pipes or around the meter, would it have a tendency to lessen that vibration of the meter?

"A. I think it would.

"Q. Hold it more secure. You think that would have rendered it less likely to have caused the condition that you found there?

"A. I think it would have a tendency. The vibration—if there was no vibration there, movement there—the constant movement might have backed that connection up; if it had been strapped up, that might have been averted, if that was the cause of it".

In view of the above testimony, this court can not, in the language of article VII, section 3c of the Oregon Constitution, "affirmatively say there is no evidence to support the verdict". True, it may be a border line case, but upon demurrer to the evidence, every reasonable intendment which can be deduced therefrom must

be resolved in favor of the plaintiff. The case at bar is quite analogous to *Shideler v. Capital Gas & Electric Co.*, 126 Kan. 33 (266 P. 741), wherein a judgment for the plaintiff was upheld. After careful consideration of the able briefs submitted and after having made an independent search of the authorities, we conclude that there was no error in submitting this cause to the jury. There is some evidence tending to show improper and faulty installation.

■ Error is assigned because of the instructions relative to permanent injury. Only a general exception was taken by defendant to the instruction given as requested by plaintiff. The attention of the court was not directed to the fact that there was no evidence tending to support damages for permanent injuries. Under this state of the record, it will not do to complain here.

■ Defendant takes exception to the refusal of the trial court to permit it to poll the jury. Counsel stipulated to accept a sealed verdict. When the verdict was returned in the morning, it was read by the court and handed to the clerk to be filed. After the jury had separated, then counsel, in the afternoon of the same day, made a request to poll the jury. Under section 2-319, Oregon Code 1930, the poll of the jury must be made before the verdict is filed. In *Freeman v. Wentworth & Irwin, Inc.*, 139 Or. 1 (7 P. (2d) 796), the request for a poll of the jury was made in the presence of the jury, before the verdict was filed. In the present case, counsel waived the presence of the jury and it was entirely proper for the court to accept the sealed verdict and direct the clerk to file the same. We see no merit in this assignment of error.

Finally, complaint is made concerning misconduct of counsel for plaintiff in argument to the jury. No request was made of the court to order a mistrial. Indeed, the court was not even requested to direct the jury to disregard the remarks of counsel. The argument was not taken by the court reporter and counsel do not agree as to what was said. We see no cause for reversal.

The judgment is affirmed.

BEAN and KELLY, JJ., concur.

CAMPBELL, J., dissents.