Argued October 17, 1956, affirmed October 16, 1957

# RODGERS INSURANCE AGENCY *v.* ANDERSEN MACHINERY

316 P. 2d 497

*William B. Murray,* Portland, argued the cause for appellant. With him on the brief was Donald R. Stark, Portland.

*Jack M. McLaughlin,* Portland, argued the cause for respondent. With him on the brief were McCarty & Swindells, Portland.

Before WARNER[*], Chief Justice, and ROSSMAN, PERRY[**] and McALLISTER, Justices.

## McALLISTER, J.

This is an action by Rodgers Insurance Agency, Inc., an Oregon corporation, as plaintiff, against Andersen Machinery, also an Oregon corporation, and its president Roy G. Andersen, to recover insurance premiums alleged to be due from said defendants. The defendant Andersen Machinery filed a counterclaim against plaintiff for damages alleged to have resulted from the breach by plaintiff of an agreement to procure certain other insurance covering machinery of the defendant. A directed verdict was entered in favor of Roy G. Andersen and he is no longer involved in this case. We will therefore refer to Andersen Machinery as the defendant.

Plaintiff's claim is for the balance of the insurance premiums alleged to be due on two policies of fire insurance issued by Glens Falls Insurance Company through plaintiff as its agent, covering the machinery and other personal property of the defendant. The policies were known as provisional policies. They provided for an initial premium and required monthly reports from the defendant of the actual cash value of the property insured at each location. The policies further provided that the actual premium should be determined at the expiration of the policies by the application of a formula set out in the policies based on the average values reported by the defendant. The first policy was for a term of one year beginning September 1, 1948 and the second policy for a like term

---

[*] Chief Justice when case argued.
[**] Chief Justice when case decided.

beginning September 1, 1949. Plaintiff claimed that the additional premium on the first policy, based on the reports furnished by defendant, was the sum of $321 and that the additional premium on the second policy was $204.75 and demanded judgment against defendant for these sums with interest.

Defendant denied generally the material allegations of the complaint and affirmatively alleged payment of all insurance premiums which may have been due plaintiff. Defendant's answer included a counterclaim for damages alleged to have resulted from a breach by plaintiff of an agreement to procure certain insurance for defendant. The allegations describing the alleged agreement are contained in paragraph IV of the counterclaim, reading as follows:

> "About July of 1947, the plaintiff and the defendant entered into an agreement whereby the plaintiff agreed to procure for the defendant, in consideration of defendant's agreeing to pay to the plaintiff its premium charges therefor, certain Inland Marine Insurance with floater attached insuring the defendant against loss from mysterious disappearance and loss from conversion of certain contractors equipment hereinafter described concerning the periods of time hereinafter mentioned."

After alleging that plaintiff breached its agreement by failing to procure the described insurance, defendant alleged that about May 30, 1948, it leased to the city of Portland five light plants of the reasonable value of $2,084.14 and that said light plants "mysteriously disappeared about May of 1948, and were converted by a person or persons unknown to the defendant." It was further alleged that defendant placed aboard the SS Pioneer a drum hoist and accessories of the reasonable value of $1,618.75 "which mysteriously

disappeared and was converted by a person or persons unknown to defendant during 1949." Defendant demanded judgment on its counterclaim for the reasonable value of all of said equipment in the sum of $3,702.89.

The plaintiff filed a reply denying generally the material allegations of the answer and of the counterclaim.

The trial court was of the opinion that a directed verdict should have been granted against the defendant on its counterclaim but at the request of the defendant submitted the counterclaim to the jury pursuant to ORS 18.140[1]. The court advised the parties that if the jury should return a verdict for the defendant on the counterclaim he would set the verdict aside and grant a judgment against the defendant on the counterclaim notwithstanding the verdict.

■ The case was submitted to the jury with appropriate instructions to bring in a verdict for the plaintiff if it found in favor of the plaintiff on the cause of action alleged in the complaint and to bring in a separate verdict for the defendant if it found in favor of the defendant on the counterclaim. The court properly told the jury to "treat them like two law suits." The jury in compliance with the instructions of the court returned with two separate verdicts, one in favor of plaintiff for the full amount of its claim in the sum of $525.75 with interest at six per cent per annum from October 4, 1950, and the other in favor of the defendant on its counterclaim in the sum of $2,400. When the

---

[1] ORS 18.140 (2). "In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed."

jury returned with these two verdicts the following proceedings took place:

"The Court: Ladies and gentlemen of the jury, have you arrived at a verdict in this case?

"The Foreman: Yes, sir.

"The Court: May I have the verdict, please.

"Mr. Murray and Mr. McLaughlin, there are two verdicts here, one for the plaintiff and one for the defendant. Now, it is impossible to have two verdicts in one case.

"Ladies and gentlemen of the jury, it is impossible to have two verdicts in one case where there is one party plaintiff and one party defendant. Either the plaintiff is entitled to prevail or the defendant is entitled to prevail. If you think that the plaintiff is entitled to so much money and the defendant is entitled to so much money, and it is more, why, then it should be deducted from the defendant, so I am going to have the reporter prepare two new verdicts and resubmit it to you. Now, you will retire to your jury room and I will have the reporter make out the verdicts in blank right away and have the bailiff give them to you."

Counsel for the defendant objected to the resubmission of the case to the jury on the ground that the two verdicts were not inconsistent and that both verdicts should be received and judgment entered based upon said verdicts. Counsel for the plaintiff objected to the refusal of the court to receive and enter the verdict in favor of the plaintiff.

After further deliberation, the jury returned with a verdict in favor of defendant in the sum of $1,758.75. This amount was evidently computed in accordance with the instructions of the court by deducting from the $2,400 which the jury had awarded on the counterclaim the sum of $525.75 which it had awarded plaintiff plus interest on said sum at six per cent per annum

from October 4, 1950 to May 6, 1954, the date on which the verdict was returned. The computation of the interest by the jury at $115.50 was not exact but the error was de minimis.

The court asked the jury whether the verdict was unanimous and upon being advised that it was not, directed the clerk to poll the jury. When asked whether it was their verdict, eleven jurors answered in the affirmative and one in the negative. The verdict was then received over the objection of the plaintiff and the jury discharged. The two original verdicts were obtained from the foreman of the jury and preserved by the court but were not filed at that time.

On May 10, 1954, the plaintiff filed a motion for a judgment notwithstanding the verdict. After considering the motion, the court concluded that it had erred in refusing to receive the two original verdicts and on May 24, 1954, entered an order which set aside the last verdict for the defendant in the sum of $1,758.75, also set aside the first verdict for the defendant in the sum of $2,400, directed that the verdict for the plaintiff in the sum of $525.75 be received and entered and directed that judgment for the plaintiff be entered on that verdict. The two verdicts originally returned by the jury were both filed on May 24, 1957 with this order.

On May 26, 1954, a judgment in favor of plaintiff was entered in the sum of $525.75, together with interest thereon at the rate of six percent per annum from October 4, 1950. From that judgment this appeal is taken.

The first two verdicts should have been received and filed. As this court held in *Forest Products Co. v. Dant & Russell,* 117 Or 637, 645, 244 P 531:

"* * * ordinarily it is better practice where different causes of action are joined in one action

for the jury to find a separate verdict as to each cause.

"Separate findings upon each of two issues presenting separate causes of action are not special but general verdicts: Robinson v. Berkey, 100 Iowa, 136, 143 (69 N.W. 434, 62 Am. St. Rep. 549). A verdict for both plaintiff and defendant is not necessarily inconsistent, if the separate findings are on causes of action severally pleaded by them respectively: 38 Cyc. 1927."

■ The court did not err in setting aside the last verdict and receiving and entering the verdict for the plaintiff. *Reynolds et al. v. Kanzler,* 126 Or 245, 269 P. 230, was an original proceeding in mandamus to require a judge of the circuit court to receive and enter two verdicts returned in an action between Richard P. Landis and Mabelle E. Landis as plaintiffs, and James A. Reynolds and Minerva D. Reynolds as defendants. The jury had returned a verdict for the plaintiffs on their first cause of action in the sum of $2,854.49 and a separate verdict for the defendants on their cause of action against plaintiffs in the sum of $2,975. The trial judge being in doubt as to the validity of the verdict, directed a mistrial and discharged the jury but preserved the verdicts. This court directed the trial court to record the verdicts and pronounce judgment thereon. We quote from the opinion in *Reynolds et al. v. Kanzler,* supra, as follows:

"When the findings recorded above are read in the light of the pleadings, there is neither uncertainty, ambiguity nor indefiniteness therein. Each party to the litigation alleged certain causes of action against the other; and these verdicts represent the expressed intention of the jury. In the plaintiffs' first cause of action the jury decided, according to the verdict, that plaintiffs were entitled to recover from defendants the sum of

$2,854.49. In the accompanying verdict covering the defendants' cause of action, the jury manifestly intended to find that defendants were entitled to recover from plaintiffs the sum of $2,975. So that, according to these verdicts, the defendants are entitled to recover of and from the plaintiffs the amount remaining after deducting $2,854.49 from $2,975.: Forest Products Co. v. Dant & Russell, 117 Or. 637 (244 Pac. 531); Whitely Malleable Castings Co. v. Bevington, 25 Ind. App. 391 (58 N.E. 268); Beaumont Rice Mills Co. v. Campbell (Tex. Civ. App.), 113 S.W. 971; Crow v. Crow, 134 Ga. 10 (67 S.E. 400); 25 Stand. Ency. of Proced. 974. On this point, 22 Ency. Pl. & Pr. 915, states that if, from the data contained in the findings returned, the amount recoverable is determinable by a mere mathematical calculation, the findings are sufficient. * * *"

■ Defendant contends that the verdict for the plaintiff cannot be entered because it did not have an opportunity to poll the jury as to that verdict. The court has held in *Freeman v. Wentworth & Irwin, Inc.*, 139 Or 1, 7 P2d 796, that the privilege granted by ORS 17.355 (2) to have the jury polled is an absolute right. But this is a right that may be waived. See *Applegate v. Portland G. & C. Co.*, 142 Or 66, 18 P2d 211. We believe that when defendant objected to the resubmission of the case to the jury and urged the court to enter judgment based on the two original verdicts, it expressed satisfaction with both verdicts and waived its right to have the jury polled.

In any event, the jury was polled on the last verdict and 11 jurors stated that it was their verdict. It is clear that this verdict was merely a mathematical computation made by the jury pursuant to the instructions of the court of the difference between the two

verdicts originally returned. Thus, the defendant was in exactly the same position as if its objection to the resubmission of the case had been allowed and the two original verdicts received in the first instance. After the last verdict was returned defendant tried to withdraw its objection to the resubmission of the case to the jury but we attach no importance to this belated attempt by defendant to improve its position.

If the jury when the case was resubmitted to it had returned an entirely different verdict instead of a composite of its first two verdicts, then obviously the original verdicts could not have been later received and entered. But under the circumstances of this case we hold that the trial court properly corrected its own error and that defendant was not prejudiced thereby.

Defendant also assigns as error the action of the court in allowing plaintiff's motion for directed verdict. Since the court did not direct a verdict for the plaintiff on defendant's counterclaim, we assume that defendant intended to assign as error the action of the court in entering judgment for plaintiff notwithstanding the verdict for defendant and will so treat the assignment. See *Tomasek v. Oregon Highway Com'n,* 196 Or 120, 248 P2d 703.

■ The law appears to be well settled that an insurance agent or broker who for a consideration agrees to procure insurance for another will be liable for any damage resulting from an unjustifiable breach of the agreement. *Lindsay v. Pettigrew* (1894), 5 SD 500, 59 NW 726; *Rezac v. Zima* (1915), 96 Kan 752, 153 P2d 500; *Mayhew v. Glazier* (1920), 68 Col 401, 189 P 842; *Gay v. Lavina State Bank* (1921), 61 Mt 449, 202 P 753; *Derby v. Blankenship* (1950), 217 Ark 272, 230 SW2d 481. See also 29 ALR2d 175; 2 Couch on Insurance

1329, § 468; 16 Appleman Insurance Law and Practice 300, § 8841.

■ Although this court has apparently not passed on the precise question, we believe that a contract to procure insurance should be proved with the same certainty as an oral contract of insurance or agreement to insure. The essential elements of such an agreement were first stated by this court in *Cleveland Oil Co. v. Ins. Society*, 34 Or 228, 233, 55 P 435, in the following language:

> " 'In order to make a valid contract of insurance,' says Mr. Wood, in his work on Fire Insurance (2 ed.) § 5, 'several things must concur: First, the subject-matter to which the policy is to attach, must exist; second, the risk insured against; third, the amount of the indemnity must be definitely fixed; fourth, the duration of the risk; and, fifth, the premium or consideration to be paid therefor must be agreed upon, and paid, or exist as a valid legal charge against the party insured where payment in advance is not a part of the condition upon which the policy is to attach. The absence of either or any of these requisites is fatal in cases where a parol contract of insurance is relied upon.' It is not the duty of courts to make contracts for parties, but to interpret the engagements they have undertaken, and, in view of this legal principle, the rule is well settled that, before a contract of insurance or to insure can become binding, all these necessary elements must be understood, assented to, and agreed upon, either expressly or by implication, before there can be an absolute binding obligation between the parties: * * * [cases cited]. When a parol contract of insurance is relied upon to sustain a recovery of damages resulting from a breach of the agreement, or to enforce a specific performance of the terms which have been mutually assented to, the existence of the contract must be conclusively established: * * *."

The foregoing rule was quoted with approval in the more recent case of *Cerino v. Oregon Physicians' Service,* 202 Or 474, 276 P2d 397.

■■ When viewed in light of the rule previously adopted by this court in the above cases, the evidence offered by the defendant wholly failed to establish a valid contract. The only witness who testified for defendant on this phase of the case was its president Roy G. Andersen. With regard to the risk insured against, he first testified that plaintiff agreed "to provide us with an inland marine coverage which would provide us coverage from loss by upset or theft or mysterious disappearance or conversion or any contingency that involved the rental fees." Mr. Andersen later testified that the insurance was to cover "any contingency that might arise on the rental fees, fire, upset, theft, or mysterious disappearance, another definition for stealing, and conversion." What variety of risks the witness had in mind when he used the term "any contingency that involved the rental fees" we do not know, but we believe the language is entirely too indefinite to form the basis for a valid contract to procure insurance.

No testimony was offered to prove either the amount of the indemnity, the duration of the risk or the premium to be paid for the policy. The evidence was even indefinite as to the property to be insured, although it might be inferred therefrom that the policy was to cover all machinery owned by the defendant and rented to others.

Although in its counterclaim defendant alleged that the five light plants leased to the city of Portland on May 30, 1948 mysteriously disappeared and were converted by a person or persons unknown to the defendant, Mr. Andersen testified that they "were lost in the flood." He was referring to the disastrous flood which

occurred in May 1948, commonly referred to as the "Vanport" flood. There apparently was no conversion and no mystery about the disappearance of this equipment. If loss by flood was a risk to be insured against, Mr. Andersen did not mention it in his enumeration of the hazards unless it was included as a contingency involving the rental fee.

The evidence further showed that the defendant did bring an action against The Employers Fire Insurance Company under a policy insuring defendant's equipment against loss by theft to recover the value of three of the same light plants for which recovery is sought in this action. In the complaint against The Employers Fire Insurance Company, verified by Mr. Andersen, it is alleged that the three light plants were lost by theft in June of 1948.

We deem it unnecessary to further review the testimony. The evidence offered by the defendant was wholly lacking in that degree of clarity necessary to prove a contract to procure insurance. We are satisfied that the court did not err in entering judgment for the plaintiff notwithstanding the verdict of the jury in favor of defendant on its counterclaim.

Affirmed.