**Preston A. PARKINSON, Appellant,**

v.

**The CALIFORNIA COMPANY, a corporation; and Stanolind Oil and Gas Company, a corporation, Appellees.**

**No. 5169.**

United States Court of Appeals
Tenth Circuit.

March 15, 1956.

Rehearing Denied April 11, 1956.

George L. Barnard, Idaho Falls, Idaho (E. N. Moody, Jackson, Wyo., was with him on the brief), for appellant.

**434**

John P. Akolt, Denver, Colo. (John P. Akolt, Jr., Robert A. Dick, Denver, Colo., Wilfrid O'Leary, Cheyenne, Wyo., were with him on the brief), for appellee, The California Co.

Albert E. Nelson, Rock Springs, Wyo. (A. G. McClintock, Cheyenne, Wyo., was with him on the brief), for appellee, Stanolind Oil and Gas Co.

Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and CHRISTENSON, District Judge.

CHRISTENSON, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Wyoming dismissing on motions of the respective defendants an action brought by plaintiff, Preston G. Parkinson, against The California Company and Stanolind Oil and Gas Company for their alleged negligence in failing to "malodorize" propane gas which they had represented, by a delivery ticket accompanying the shipment supplied to plaintiff's immediate vendor, had been malodorized, and the explosion of which caused substantial injury to the person and property of plaintiff. The theory of plaintiff was that if an odorizing agent had been added to the gas, as reasonable care required, its escape from the tanks on plaintiff's premises would have been detected before any explosion would have occurred. The trial court apparently adopted defendants' view that the record before it conclusively demonstrated that no negligence of theirs, but rather the negligence of the retailer and its agent as an independent intervening cause was responsible for the explosion. The questions thus posed involve the sufficiency of the complaint to state a claim on which relief can be granted; the duty, if any owed by defendants to plaintiff; the effect of pleadings in a prior action between the same parties on a similar claim in the state court and the rule of causation to be applied in this type of case. These questions can best be understood and determined upon a review of the proceedings and pleadings in both actions. The parties will be referred to herein as "plaintiff" and "defendants" according to their designation in the trial courts.

In his complaint in the United States District Court the plaintiff alleged in substance that he resided and operated a cafe and bar owned by him in Teton County, Wyoming; that in this connection he used for heating purposes propane gas manufactured and distributed by the defendants, The California Company and Stanolind Oil and Gas Company, which he obtained from the Teton Gas and Appliance Company, a local retailer (not a party to the action in the federal court); that by reason of the inherently dangerous nature of propane gas, reasonable care required the addition to it of a suitable odorizing agent commonly known as a "malodorant" to indicate positively by distinct odor the presence of gas in quantity within the limits of combustability in the event of any escape of such gas from its containers, and that reasonable care and caution required such malodorant to be added by the producers and distributors at such time as gas is delivered to retail dealers when intended for resale to domestic consumers; that for more than two years prior to plaintiff's damage, the defendants regularly supplied the Teton Gas and Appliance Company with propane gas, ordinarily with a proper odorizing agent added, which was indicated by notations upon delivery tickets; that in May, 1953, the defendants, well knowing that the same was intended for domestic use where proper odorization was necessary in the exercise of ordinary care, sold and delivered a quantity of propane gas to the Teton Gas and Appliance Company which had no malodorant added or which, at best, had an amount insufficient to be detected in the event of its escape from its containers, notwithstanding that it was represented by the defendants through their placing of information to that effect on the delivery ticket that sufficient quantities of malodorant had been added; that a quantity of this gas which had been sold by the retailer to the plaintiff escaped

from the containers in which it had been placed on plaintiff's premises in some manner unknown to plaintiff; that upon discovering that he had no hot water, plaintiff called the Teton Gas and Appliance Company, which sent a workman to investigate; that this workman discovered the pilot light on the water heater to be out; that due to the negligence of the defendants in failing to properly odorize said gas, there was no odor of escaped gas apparent to the workman, who thereupon attempted to light the pilot light of the water heater, setting off an explosion, and that this explosion was proximately caused by the negligence of the defendants "in failing to add such odorizing agent, or a sufficient amount thereof, to said propane gas at or prior to the time of the delivery thereof to said Teton Gas and Appliance Company, and in misrepresenting to said Teton Gas and Appliance Company that such odorizing agent had been added, when in fact the defendants had failed to add the same * * *."

To this complaint the defendants interposed separate motions to dismiss which were granted by the trial court generally without specifying reasons. Each motion was based upon the grounds that (1) the plaintiff's complaint failed to state a claim on which relief could be granted; and (2) the plaintiff had no claim against the defendants upon which relief could be granted by reason of circumstances which may be summarized as follows: That prior to the filing of the suit in the federal court, the plaintiff instituted an action based upon the same claim in the District Court of the Third Judicial District, County of Teton, State of Wyoming, in which action The California Company and Stanolind Oil and Gas Company, as well as Teton Gas and Appliance Company, were defendants, copies of the verified petition filed in the state court being annexed to the defendants' motions; that thereafter, The California Company and Stanolind Oil and Gas Company filed demurrers to the petition and that such demurrers were sustained; that the plaintiff did not, within the time allowed by the order sustaining the demurrers, or at all, file an amended petition, but did file his motion to dismiss said action without prejudice as against The California Company and Stanolind Gas and Oil Company, and that such motion, without the consent of the defendants, was granted; and that said cause is still pending and undetermined in the state court as against Teton Gas and Appliance Company. The record of the foregoing allegations was supported by affidavit accompanying the motions to dismiss. No counter showing was made by the plaintiff before the trial court.

Looking now to the plaintiff's verified petition in the Wyoming state court, as referred to in defendants' motions, its allegations were for practical purposes the same as those of the federal court complaint, except that it named as a party, and charged with negligence, also Teton Gas and Appliance Company, the retailer. Plaintiff's theory at that time is indicated by allegations under oath in the state court action to the effect that The California Company manufactured a quantity of propane gas and shipped it to Stanolind without properly malodorizing it, although the shipping tag attached to the container stated that a malodorant had been added; that Stanolind received the gas and without checking it for malodorant sold a quantity of it to Teton Gas and Appliance Company, who allegedly accepted the gas and without further checking as to the presence of any malodorant, delivered part of it to the plaintiff by connecting the tank containers to a water heater and stove, which had previously been purchased by plaintiff from Teton, which installed them on plaintiff's premises; that all three defendants were aware of the inherent dangers of such gas, its propensity to escape confinement, and the difficulty of detecting its presence unless a malodorant had been mixed with it; that Teton negligently, carelessly and improperly installed the water heater and stove on plaintiff's premises in such a manner that a large quantity of this gas escaped from its containers; that upon discovering

that he had no hot water, the plaintiff called Teton, which sent a workman over to investigate; that the workman knew, or should have known, that gas had escaped, since the pilot light was out, and that it was likely present in dangerous amounts, but that, without taking any precautionary measures, he negligently and recklessly struck a match with the intention of lighting the pilot light, and thereby caused the explosion. Plaintiff further alleged that the explosion was due to the concurrent negligence of The California Company in failing to add a malodorant, of Stanolind in accepting and receiving the gas in such condition and delivering it to Teton without testing for the presence of a malodorant or adding it, and of Teton for accepting it in this condition and not checking for the malodorant or adding it, and further, for improperly installing the stove and water heater and striking the match in an attempt to light the pilot light.

The first question for determination is whether plaintiff's complaint in the federal court, without reference to the state court proceedings, states a claim on which plaintiff might recover. On motion to dismiss, every material fact well pleaded in the complaint, construed in the light most favorable to the plaintiff, is admitted, and any ambiguities must be resolved in favor of the claim attempted to be stated. Porter v. Karavas, 10 Cir., 1946, 157 F.2d 984; Gulf Coast Western Oil Co., Inc., v. Trapp, 10 Cir., 1947, 165 F.2d 343, 350, certiorari denied 338 U.S. 826, 70 S.Ct. 74, 94 L.Ed. 502; Vrooman v. Beech Aircraft Corp., 10 Cir., 1950, 183 F.2d 479; Knox v. First Security Bank of Utah, 10 Cir., 1952, 196 F.2d 112.

Gas is an inherently dangerous substance and it is incumbent upon those who deal in it to use care commensurate with its harmful nature. Winkler v. Macon Gas Co., Inc., 361 Mo. 1017, 238 S.W.2d 386; Richey & Gilbert Co. v. Northwestern Nat. Gas Corp., 1943, 16 Wash.2d 631, 134 P.2d 444, 449; Applegate v. Portland Gas & Coke Co., 1933, 142 Or. 66, 18 P.2d 211, 212; Doxstater

v. Northwest Cities Gas Co., 1945, 65 Idaho 814, 154 P.2d 498. Depending upon the circumstances, failure to artificially odorize gas may constitute actionable negligence. Doxstater v. Northwest Cities Gas Co., supra, (statutory); Willoughby v. Sinclair Oil & Gas Co., D.C.W.D.Okl.1950, 89 F.Supp. 994, reversed on other grounds, 10 Cir., 188 F. 2d 902; Richey & Gilbert Co. v. Northwestern Nat. Gas Corp., supra; Thompson v. Economy Hydro Gas Co., 1953, 363 Mo. 1115, 257 S.W.2d 669, 673; the Wyoming case of Northwest States Utilities Co. v. Brouilette, 1937, 51 Wyo. 132, 65 P.2d 223, 69 P.2d 623 appears not in point on other elements of the case but it is a fair inference from language appearing on pages 232–233 of the Pacific report that failure to odorize gas in appropriate circumstances may constitute actionable negligence under the laws of Wyoming. In Winkler v. Macon Gas Co., Inc., supra, the remote supplier was held not liable on the peculiar facts there involved; however, implicit in the decision is the inference that had the supplier known, or had reason to know, that the gas contained no malodorant, liability would have been imposed.

Defendants rely upon the rule that where privity of contract does not exist a manufacturer is not liable to an ultimate consumer for damages resulting from the defective condition of a product purchased from an intermediate retail dealer, even though the defective condition arises from negligence on the part of the manufacturer. This principle has been frequently applied but its qualification under modern authority is equally as accepted—that the manufacturer or supplier of an article inherently dangerous to human safety is liable for the foreseeable consequences of his negligence to persons beyond the immediate purchaser. A.L.I. Restatement, Torts §§ 388, 394; 65 C.J.S., Negligence, § 100, p. 618 et seq.; Vrooman v. Beech Aircraft Corp., supra; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. Mr. Justice Cardozo in the latter case mentioned knowledge

that no new tests were to be made as among conditions giving rise to liability. Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635, 641 asserts that under the McPherson rule this is not actually a limitation upon the manufacturer's ultimate liability if the latter's negligence proximately contributes to the damage. See also A.L.I. Restatement, Torts Revised Section 396. Assuming, without deciding, that the failure of a vendee to properly inspect and test is not within the foreseeable risk of the manufacturer in the absence of special circumstances, it can be inferred from the complaint now before us that because of their express warranty of malodorization, the manufacturer and distributor knew that the gas would be used by the ultimate consumer without new tests.

We perceive no reason why the allegations of the complaint in the federal court are not sufficient to carry the plaintiff past a motion to dismiss for failure to state a claim on which relief can be granted. It does appear, as defendants contend, that most of the cases for failure to malodorize gas have been suits against the immediate supplier; however, in the case of Thompson v. Economy Hydro Gas Co., supra, the theory of nonliability on the part of the manufacturer for failure to malodorize was expressly rejected. No case denying recovery against a manufacturer or distributor that has been called to our attention or that we have read involved all of the elements favorable to recovery that are presented in plaintiff's complaint. It seems fair to infer that the purpose for the defendants' representation on the delivery ticket was that it might be relied upon by distributors or retailers who might otherwise be called upon to independently ascertain whether a malodorant had been added. We cannot say at this stage that it would not be natural, and reasonably to be anticipated, for recipients to be influenced by such representation, particularly in view of the asserted previous general practice of the defendants to properly malodorize the gas. That the failure

of the defendants to malodorize the gas, in connection with their express representation that it had been malodorized, was the proximate cause of plaintiff's damage is expressly averred. While the complaint does allege that the striking of a match by the workman set off the explosion, it does not follow that the workman was negligent as a matter of law. Northwest States Utilities Co. v. Ashton, 1937, 51 Wyo. 168, 65 P.2d 235; Northwestern Ohio Nat. Gas Co. v. First Congregational Church, 1933, 126 Ohio St. 140, 184 N.E. 512, 521; Dowler v. Citizens' Gas & Oil Co., 1912, 71 W.Va. 417, 76 S.E. 845, 847. As will be seen in connection with the discussion of another point, even though we were to assume negligence on the part of the workman this, in and of itself, would not shield the defendants from liability. The causal connection between the alleged negligence of the defendants and the explosion is neither unreasonable nor precluded from anything appearing on the face of the complaint. Hence, unless additional factors were brought into the case justifying a different result, the complaint should have been held sufficient to entitle the plaintiff to be heard on the merits.

We pass now to the question of whether the trial court had the right to consider, as determinative or otherwise, the allegations of the petition before the state court. Defendants' view is that this petition, being under oath, concluded plaintiff in the new action by operating as an estoppel to question the facts theretofore asserted which conclusively showed an independent intervening cause of plaintiff's damage. Plaintiff, while conceding that the state court petition was properly before the federal court, maintains that it was evidentiary and not conclusive. In this we think plaintiff is right.

True it is that a "judicial estoppel" of the nature contended for by defendants has been recognized. They rely upon a statement contained in 31 C.J.S., Estoppel, § 121, p. 390. This reflects the minority viewpoint which has encounter-

ed inhospitable reception outside the State of Tennessee. The Supreme Court of Wyoming has observed that "the Tennessee courts probably go too far" and has indicated that a position taken by a man in one proceeding ordinarily is merely evidence and cannot work an absolute estoppel in another, and that only in cases such as the one it then had before it, where the man was successful in the position taken in the first proceeding would such evidence rise to the dignity of conclusiveness in another. Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 568, 72 A.L.R. 587. Moreover, in its most rigid application, the Tennessee rule seems not to apply to statements of law or opinion, statements made through mistake or otherwise not knowingly false, nor to pleadings not in fact inconsistent or contradictory. Schultz, Baujan & Co. v. Bell, 23 Tenn. App. 258, 130 S.W.2d 149, 168 A.L.R. 758; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S.W. 313; 31 C.J.S., Estoppel, § 121, p. 390.

It is doubtful that the two pleadings under consideration here are actually inconsistent. One seems merely to omit certain facts set out in the other. Be that as it may, we must reject the theory that the pleading of a claim under oath, apart from equitable considerations which may be deemed in reason to operate as an estoppel by conduct, irrevocably freezes the contentions of the pleader so that under no circumstances may he alter his view in that, or another, case, or assert an inconsistent position. This would not be in keeping with the spirit of Federal Rules of Civil Procedure, rule 8(e) (2), 28 U.S.C.A. would be out of harmony with the great weight of authority independent of that rule, and would discourage the determination of cases on the basis of the true facts as they might be established ultimately. Even in the case of false statements in pleadings, public policy can be vindicated otherwise—and more practicably and fairly in most instances—than through suppression of truth in the future. Tracy Loan & Trust Co. v. Open-

shaw Inv. Co., 102 Utah 509, 132 P.2d 388. The prevailing rule, more in accord with reason, is stated under the principal section heading, 31 C.J.S., Estoppel, § 121, p. 386, preceding the minority view quoted by the defendants. See also Sinclair Refining Co. v. Jenkins Petroleum Process Co., 1 Cir., 1938, 99 F.2d 9, certiorari denied 305 U.S. 659, 59 S.Ct. 362, 83 L.Ed. 427. Of course, there may be an estoppel by judgment, which is a separate and distinct concept. But only under conditions giving rise to the application of an equitable estoppel, for which there is no basis here, will prior statements, in and of themselves, foreclose a party from asserting a contrary position. The inconsistent statements may be evidentiary as admissions—convincing, persuasive or of little weight, according to the particular circumstances—but in and of themselves, they will not conclude a party as a matter of law.

From what we have said it should not be supposed that the prior complaint could not have been considered by the trial court in connection with defendants' motions to dismiss. Ordinarily, such former pleadings will first come into a case at its trial on the merits, when they are offered as admissions or by way of impeachment. But in this case they were brought in on motion and it was proper for the trial court to consider them. This is not because of any principle of judicial estoppel, but because under Federal Rules of Civil Procedure, rule 12(b) (6), when the Court does not exclude such extrinsic matters, a motion to dismiss based thereon is to be treated as one for summary judgment. Where a complaint is unverified and plaintiff does not traverse defendants' affidavits or other proof showing that there is no claim upon which relief can be granted, summary judgment is proper. The prior pleadings in support of the motions were not only identified by affidavit, but were shown to have been verified by plaintiff himself. Granted that plaintiff would have had the right on summary judgment to explain this record or to deny its effect by counter-affidavit, he did

not elect to do so. Generally speaking, the allegations of a complaint may be pierced by uncontradicted evidentiary matter and in such event, will not be deemed sufficient to raise a genuine fact issue. 6 Moore's Federal Practice, para. 56.11(3), 2d Ed. 1953; General Beverages, Inc., v. Rogers, 10 Cir., 1954, 216 F.2d 413; Zampos v. United States Smelting, Refining & Mining Co., 10 Cir., 1953, 206 F.2d 171; Avrick v. Rockmont Envelope Co., 10 Cir., 1946, 155 F.2d 568; Schreffler v. Bowles, 10 Cir., 1946, 153 F.2d 1, certiorari denied 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640.

But it is immaterial at this stage whether the prior proceedings were considered or not. The state complaint, itself, did not show as a matter of law that there was any efficient and independent intervening cause for plaintiff's damage or that defendants' alleged negligence was not its proximate cause. Even assuming that the Teton Gas and Appliance Co. and its workman were negligent, as asserted in the first petition, and that their negligence contributed to cause plaintiff's damage, these factors would not necessarily insulate defendants from liability. The general circumstances and authorities set out in the first part of this opinion, to which reference is again directed, are persuasive to this effect. The rule in Wyoming seems controlling to the same effect. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Phelps v. Woodward Constr. Co., 66 Wyo. 33, 204 P.2d 179. In the latter case, Phelps and his wife claimed damages against a construction company and the Northern Utilities Company for wrongful destruction of their home by gas explosion. The trial court entered judgment on the verdict for damages against the utilities company. The utilities company appealed. There was evidence tending to show that the utilities company negligently laid a gas line on plaintiffs' lot at an unsafe and dangerous depth, and that during subsequent grading operations, the construction company struck the pipe, thereby releasing gas from a connection in plaintiffs' home, which caused the explosion. The Supreme Court of Wyoming determined that although the evidence indicated that the pipe may have been struck by the grader even though buried to a proper depth, this did not relieve the utilities company from liability. The reasons given were that a wrong-doer cannot qualify his wrong, particularly in the case of continuing nonfeasance, and that where resulting loss actually happens while a wrongful act is in force, mere possibility of damage without it is no defense. The Court then considered whether the grader's striking of the pipe was a subsequently intervening factor relieving the utilities company of responsibility. It was assumed that the construction company was negligent in some degree but the Court pointed out that it would not necessarily follow that the negligent conduct of the gas company was not at least one of the proximate or legal causes of damage to plaintiff. It stated, 204 P.2d at page 187:

"If the original wrongdoer 'could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.' Shearman & Redfield on Negligence, Rev.Ed., Section 38. See also Vol. 2, Restatement of the Law of Torts, Sections 439 and 447; Harper on Torts, Section 123; Carpenter in 16 So.Cal.Law Review, 304–307. In view of the fact that it would at least have been less likely that the pipe would have been hit by Kincaid if it had been laid at the proper depth, we cannot say that the negligence of the gas company was not a substantial factor in causing the loss of the plaintiffs. It was not merely an innocent condition of which some of the authorities speak, 45 C.J. 931, which was created by that company, but it created a condition or situation constantly fraught with a danger, which might instantly become

active and result in damage whenever anyone undertook to level the lot. * * *" (Citing 38 Am.Jur. 717, 718, with reference to an example involving the explosion of gas, the presence of which was due to the negligence of the gas company but which was exploded by the striking of a match by a stranger.)

Whether defendants' alleged original failure to malodorize the gas either standing alone or in connection with their representation that it had been malodorized, constituted negligence and, if so, whether defendants as original wrongdoers could have anticipated that an intervening act of negligence might, in natural and ordinary sequence, follow the original negligence, should not have been foreclosed without a hearing on the merits. It seems not improbable that the failure of the retailer to itself malodorize the gas or to anticipate or discover its presence when checking equipment on plaintiff's premises was proximately contributed to by defendants' erroneous representation, or by their prior course of conduct, or both. In the latter respect, this case presents an additional issue on causation between the immediate and the remote acts of negligence, not involved in the Phelps case, which more strongly suggests the conclusion we have reached. Nor could it be said with any assurance in view of the facts before the Court that the erroneous ticketing of the gas was not negligent. Had the malodorant been used, it seems likely that the leak may have been discovered quickly and the explosion prevented. See Richey & Gilbert Co. v. Northwestern Nat. Gas Corp., supra. For reasons pointed out by the Wyoming court the possibility that the explosion would have occurred even though the gas had been malodorized would not relieve an original wrongdoer whose continuing acts or failures were a contributing cause. The result might be otherwise if the record definitely disclosed that the workman who struck the match knew that there was escaped gas present. A. L.I. Restatement, Torts §§ 431, 432. But

this argument repeated in appellees' brief, is not supported by the plaintiff's pleading in the state court, which alleges in substance that he knew, or in the exercise of reasonable care should have known, of its presence. Doubts should not be resolved against the plaintiff at this stage of the proceedings, and it seems more likely that the workman was careless in failing to anticipate or discover the presence of gas, than that he struck a match with actual knowledge that it was there.

We are of the opinion that the trial court erred in sustaining the motions to dismiss. The plaintiff is entitled to be heard on the merits of his claim that he was damaged as a proximate result of the alleged negligence of the defendants. Accordingly, the judgment dismissing the complaint is reversed.