**Robert W. SMITH, Plaintiff,**

v.

**MIDLAND BRAKE, INC., Defendant.**

**Civil A. No. 94–4165–DES.**

United States District Court,
D. Kansas.

Dec. 13, 1995.

Leslie E. Diehl, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for plaintiff.

Mary K. Babcock, Foulston & Siefkin, Wichita, KS, Kelly W. Milligan, Spencer, Fane, Britt & Browne, Overland Park, KS, and James Allan Smith, Dan T. Carter, Craig P. Siegenthaler, and Daniel M. Shea, Smith, Currie & Hancock, Atlanta, GA, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. 64) and the plaintiff's motion in limine (Doc. 61).

## I. BACKGROUND

The plaintiff, Robert W. Smith, was born on December 11, 1930. The defendant, Midland Brake, Inc. ("Midland Brake"), hired the plaintiff on September 5, 1984. The plaintiff first worked as a custodian, and later as a heavy assembler. The plaintiff was laid off due to a workforce reduction on December 30, 1984. Midland Brake re-hired the defendant as a heavy assembler on July 31, 1985. The plaintiff transferred to a light assembler position in 1986, and remained in that job until he was discharged on March 3, 1993.

Between 1990 and 1992, Mr. Smith filed workers compensation claims for tendinitis in his right shoulder and dermatitis of the hands. The plaintiff alleges that he developed dermatitis as a result of exposure to irritants at work. The defendant claims that it attempted to accommodate the plaintiff's dermatitis by assigning him to duties within the light assembly department involving less exposure to irritants, and by providing him with gloves to wear. On May 5, 1992, the plaintiff's dermatitis necessitated his being removed from work by his treating physician.

The plaintiff applied for Social Security disability benefits on October 15, 1992. The Social Security Administration ("SSA") determined on September 23, 1993, that the plaintiff had been under a disability since July 5, 1992, and was therefore entitled to disability benefits.

On March 3, 1993, the defendant agreed to pay the plaintiff $20,000 in settlement of his workers compensation claim for dermatitis. That same day, the defendant terminated the plaintiff's employment, citing as its reason an inability to accommodate the plaintiff's skin sensitivity.

The plaintiff filed a complaint in the United States District Court for the District of Kansas on September 7, 1994. The plaintiff alleges that he was discharged in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Kansas Act Against Discrimination ("KAAD"), Kan.Stat. Ann. § 44–1001 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Kansas Age Discrimination in Employment Act ("KADEA"), Kan.Stat.Ann. § 44–1111 *et seq.* The plaintiff also claims that he was discharged in retaliation for his pursuit of a workers compensation claim, in violation of Kansas public policy.

## II. DISCUSSION

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477

U.S. at 249, 106 S.Ct. at 2510. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## A. *ADA Claim*

In order to prevail on an employment termination claim under the ADA, a plaintiff must establish:

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995); 42 U.S.C. §§ 12111(8), 12112(a). Where an employee is unable to perform the essential functions of his present job, "reasonable accommodation" may include reassignment of the employee to a vacant position. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii). The plaintiff maintains that between May 5, 1992, the date his physician took him off work, and March 3, 1993, the date he was discharged, there were numerous vacant positions at the defendant's plant, the essential functions of which the plaintiff was able to perform. According to the plaintiff, the defendant refused to place him in any of these positions.

Midland Brake argues that Mr. Smith is estopped by his application for Social Security disability benefits from asserting that he was qualified to perform any job at Midland Brake. In his October 15, 1992, application for disability insurance benefits, the plaintiff certified that he "became unable to work because of [his] disabling condition on July 5, 1992" and that he was "still disabled." Following the SSA's denial of disability benefits, the plaintiff submitted a request for reconsideration on January 7, 1993. The plaintiff's request contained the following statement: "I disagree with the determination made on claim for disability-worker ... benefits because I still feel that I am totally disabled and unable to work." The SSA denied the plaintiff's request for reconsideration on April 12, 1993.

On April 16, 1993, the plaintiff requested a hearing by an administrative law judge ("ALJ"). In his request, the plaintiff reiterated that he was still "totally disabled and unable to work." On September 23, 1993, the ALJ determined that the plaintiff had been disabled since July 5, 1992, and that the plaintiff was entitled to disability insurance benefits.

■ The defendant argues that because the plaintiff represented to the SSA that he was totally disabled and unable to work as of July 5, 1992, that he should be estopped from now claiming that he could perform any job at Midland Brake subsequent to that date. This court has consistently held that where an employee has alleged that he is totally disabled in order to receive disability benefits, he is estopped from claiming that he can perform the essential functions of a job under the ADA. *See Lamury v. Boeing Co.,* 1995 WL 643835, 5 Am.Disability Cas. 39 (D.Kan. Oct. 5, 1995) (elements of estoppel present where employee previously obtained workers compensation on the grounds that she was unable to perform her job); *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471 (D.Kan.1995) (impossible for plaintiff to have been disabled under Social Security law, yet able to perform the essential functions of his work under the ADA); *Ricks v. Xerox Corp.,* 877 F.Supp. 1468 (D.Kan.1995) (absent evidence that he misrepresented his condition in his pursuit of long-term disability benefits, plaintiff was arguably estopped from claiming that he was a qualified individual under the ADA); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547 (D.Kan.1995) (plaintiff who represented that she was disabled in order to receive Social Security and long-term disability benefits estopped from claiming that she was a qualified individual under the ADA); *Peoples v. City of Salina, Kan.,* 1990 WL 47436 (D.Kan. Mar. 20, 1990) (plaintiff who contended that he was completely disabled in order to receive disability retirement benefits

estopped from later claiming that he was qualified for his job) [1].

*Garcia–Paz v. Swift Textiles, Inc.* is representative of the court's decisions holding that an employee is estopped from asserting a position in an ADA action which is inconsistent with a position taken previously. In *Garcia–Paz,* the plaintiff alleged that Swift Textiles discriminated against her on the basis of her disability in violation of the ADA. 873 F.Supp. at 551. Following termination of her employment, the plaintiff had applied for long-term disability benefits and Social Security disability benefits, representing that she was totally disabled as of the date of her discharge. *Id.* at 555. Both the long-term disability insurance company and the SSA approved the plaintiff's application, and the plaintiff received benefits from both entities. *Id.* The court held that on such facts, the plaintiff was estopped from claiming that she was a qualified individual for purposes of the ADA. *Id.*

Mr. Smith contends that *Garcia–Paz* and the other cases cited by the defendant are distinguishable from the instant case, in that unlike the plaintiffs in the cited cases, he has not actually received Social Security disability benefits. The plaintiff testified in his deposition that the SSA had informed him that because he had received a workers compensation settlement from the defendant, he would benefit financially by electing to receive Social Security early retirement payments rather than disability payments. The plaintiff thus opted to receive early retirement benefits.

Most courts hold that in order for a plaintiff to be precluded from asserting a position inconsistent with a position advanced previously, the plaintiff must have succeeded in the earlier litigation. *See United States v. 49.01 Acres of Land, More or Less,* 802 F.2d 387, 390 (10th Cir.1986). Mr. Smith does not dispute that he succeeded in obtaining a Social Security determination that he was disabled and entitled to disability benefits. The

---

1. The facts in *Peoples v. City of Salina, Kansas* arose prior to the enactment of the ADA. The plaintiff in *Peoples* sought relief under the Rehabilitation Act of 1973, 29 U.S.C. § 794. 1990 WL 47436, at *1. Because the ADA expressly requires that its provisions be interpreted in a

way which "prevents imposition of inconsistent or conflicting standards" between the Rehabilitation Act and the ADA, caselaw developed under the Rehabilitation Act is instructive in deciding cases under the ADA. *See* 42 U.S.C. § 12117(b); *White,* 45 F.3d at 360 n. 5.

fact that the plaintiff refused disability compensation in order to obtain a greater recovery through early retirement benefits does not alter the fact that the plaintiff succeeded on his claim of disability before the SSA.

Other courts have held that a plaintiff who has claimed to be totally disabled is estopped from subsequently claiming that he is able to work, even where he did not succeed on his claim of total disability. In *Kennedy v. Applause, Inc.*, 1994 WL 740765, 3 Am.Disability Cas. 1734 (C.D.Cal. Dec. 6, 1994), the plaintiff sought Social Security and state disability benefits, claiming that she was completely disabled. *Id.* at *3. Although the SSA denied the plaintiff's application for disability payments, the court held that the plaintiff's representations as to her disability prevented her from arguing under the ADA that she was able to return to work. *Id.* at *3, *7 n. 6. Similarly, the plaintiff in *Leatherwood v. United Parcel Serv.*, 708 S.W.2d 396 (Tenn.Ct.App.1985), had testified in his workers compensation suit that he was 100 percent disabled. *Id.* at 402. The court held that the plaintiff's testimony estopped him from later arguing that he had been fired in retaliation for filing a workers compensation claim, despite the fact that the plaintiff had been determined to be only 50 percent disabled. *Id.* at 398, 402.

■ The plaintiff also contends that the position he takes now in claiming that he could have performed the essential functions of a job at Midland Brake is not inconsistent with the position he took in his pursuit of SSA disability benefits. Mr. Smith made the following statements in his initial application for disability benefits: "I became unable to work because of my disabling condition on July 5, 1992. I am still disabled." The plaintiff alleges that his statements merely indicated that he was unable to perform his job in the assembly department at Midland Brake. The court, however, is not persuaded by this argument. Mr. Smith's statements on his application represent unconditional assertions as to his disability, and the plaintiff cannot now seek to qualify those statements where the application itself is unequivocal.

The SSA denied the plaintiff's application for disability benefits on December 9, 1992, and the plaintiff's request for reconsideration on April 12, 1993. The plaintiff then requested a hearing by an ALJ, and finally succeeded in his pursuit of disability benefits on September 23, 1993. In both his request for reconsideration and his request for a hearing before an ALJ, the plaintiff stated that he disagreed with the SSA's determination because he felt that he was still "totally disabled and unable to work."

The plaintiff again argues that he did not really mean what he said. In its December 9, 1992, and April 12, 1993, denial of benefits, the SSA made the following statement: "We have determined that although your overall medical condition places some restrictions on your ability to work, these limitations do not prevent you from doing your past work as a school teacher, as it is generally performed." Because he had difficulty speaking for extended periods and difficulty hearing, and had not maintained his teaching certification, the plaintiff disagreed with the SSA's conclusion that he could work as a teacher. The plaintiff contends that he executed a pre-printed form which contained the statement that he was "totally disabled and unable to work" because he believed that he was unable to perform the functions of a teacher, and that his statement that he was totally disabled was mistaken or inadvertent.

The fact that the plaintiff's signed statements that he was "totally disabled and unable to work" were pre-printed, rather than of the plaintiff's creation, is of little consequence, especially when viewed in light of corroborating statements in the plaintiff's applications. In his Reconsideration Disability Report, Mr. Smith stated that his hands were so sore the majority of the time that he was "unable to use fingers to do anything with same," and that he was "unable to work either inside or outside." As the plaintiff points out, he did state in his disability report that he disagreed with the SSA's determination that he could teach. The plaintiff followed this objection, however, with the following statement: "My problem is that I'm partially disabled in so many areas that over-all that [sic] combine to make me permanently disabled as total body."

Furthermore, the SSA explained to Mr. Smith the requirements for being considered disabled. The SSA's denials of Mr. Smith's initial application and request for reconsideration contained the following language:

> To be considered disabled, a person must be unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last for at least 12 months in a row. *The condition must be severe enough to keep a person from working not only in his or her usual job, but in any other substantial gainful work.* We look at the person's age, education, training, and work experience when we decide whether he or she can work.

(emphasis added). In light of the fact that the SSA explained to the plaintiff that to be "disabled" one must be not only unable to perform his usual work, but *any* substantial gainful work, the plaintiff cannot now argue that when he claimed to be "totally disabled and unable to work" that he meant only that he was unable to work as a teacher and/or an assembler at Midland Brake.

■ The plaintiff also argues that the SSA's determination that he is disabled does not preclude him from claiming that he is a qualified individual under the ADA, because an SSA determination that a person is disabled does not mean that that person cannot "perform the essential functions" of any job. In his decision, the ALJ stated that "[g]iven the claimant's residual functional capacity, and the vocational factors of his age, education and past relevant work experience, there are no jobs existing in significant numbers that the claimant is capable of performing. The claimant is under a disability as defined by the Social Security Act and Regulations." The plaintiff also cites 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00(c), which provides that a finding of "disabled" is warranted for individuals of advanced age who are capable of performing only light work. The plaintiff maintains that the ALJ's decision therefore does not indicate that the plaintiff was unable to engage in any substantial gainful activity, or that he was unable to perform any job at Midland Brake.

The plaintiff's argument on this point fails for several reasons. First, the plaintiff ig-nores the ALJ's decision that the plaintiff was entitled to disability benefits under sections 216(i) and 223 of the Social Security Act. Sections 216(i) and 223, codified at 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A), respectively, define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." Second, the ALJ does not reference 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00(c), or otherwise suggest that the plaintiff is capable of performing light work. Finally, and most importantly, even if the SSA's determination of disability took into consideration age and other factors, this does not change the fact that the plaintiff unqualifiedly stated that he was unable to work. The case law is clear that it is the *plaintiff's* inconsistent representations which have preclusive effect. *See, e.g., Lamury,* 1995 WL 643835, at *6; *Nguyen,* 905 F.Supp. at 1484; *Ricks,* 877 F.Supp. at 1477 n. 9.

Mr. Smith argues more persuasively that he should not be estopped by his representations to the SSA, because the Tenth Circuit has rejected the doctrine of judicial estoppel. *See 49.01 Acres of Land,* 802 F.2d at 390 (citing *Parkinson v. California Co.,* 233 F.2d 432 (10th Cir.1956)); *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1520 n. 10 (10th Cir.1991). In *Parkinson,* the Tenth Circuit held that "[e]ven in the case of false statements in pleadings, public policy can be vindicated otherwise—and more practicably and fairly in most instances—than through suppression of truth in the future." 233 F.2d at 438.

We are not convinced, however, that the Tenth Circuit would find estoppel to be inapplicable on the facts of this case. We base our conclusion on an examination of recent Tenth Circuit decisions, as well as learned treatises on the subject.

In *United States v. 49.01 Acres of Land, More or Less,* 802 F.2d 387 (10th Cir.1986) [hereinafter *49.01 Acres of Land II*], landowners appealed a district court ruling that a Tenth Circuit decision in a related case, *United States v. 49.01 Acres of Land, More or Less,* 669 F.2d 1364 (10th Cir.1982) [hereinafter *49.01 Acres I*], controlled in *49.01*

*Acres II.* 802 F.2d at 388–89. In *49.01 Acres I,* however, the landowners had argued to the contrary, asserting that the court's decision in that case would control in *49.01 Acres II. Id.* at 390. The government contended that the landowners should be estopped from adopting a position in *49.01 Acres II* which was inconsistent with their position in *49.01 Acres I. Id.*

The court, citing *Parkinson,* responded that the Tenth Circuit had rejected the doctrine of judicial estoppel. *Id.* The court noted, however, that even if it were not bound by its *Parkinson* decision, the doctrine of judicial estoppel did not apply in that case, because the party presenting an inconsistent position had not succeeded in the earlier litigation. *Id.*

49.01 *Acres II* is distinguishable from the instant case, in that the plaintiff in this case succeeded under his previous position. Also, the inconsistent positions of the plaintiff in *49.01 Acres II* involved contradictory assertions as to the governing *law,* while Mr. Smith has maintained inconsistent positions in regard to material *facts* in his case. The doctrine of judicial estoppel normally applies only to statements of fact, not legal conclusions. *Brown v. Board of Educ.,* 84 F.R.D. 383, 397 n. 9 (D.Kan.1979) (citing 31 C.J.S. *Estoppel* § 117, at 613 (1964)). Furthermore, a plaintiff may be precluded from arguing contradictory sets of facts, independent of the doctrine of judicial estoppel.

> Preclusion by inconsistent positions, or judicial estoppel, is limited to change of position taken in judicial proceedings.... [T]here are cases in which the preclusion doctrine is characterized as a branch of equitable estoppel. *Many cases, however, have recognized that independent of res judicata, collateral estoppel, or equitable estoppel traditionally conceived, a litigant is not completely free to argue whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change.* As it has been put in a number of cases, one may not play "fast and loose" with the judicial process. *This principle has been applied,* for example, to preclude changes in position in successive stages of the same litigation, and *to dismiss a complaint alleging a state of facts inconsistent with a position taken in a prior litigation.*

1B James W. Moore, *Moore's Federal Practice* ¶ 0.405[8], at III–54–56 (2d ed. 1995) (emphasis added).

The other case cited by the plaintiff, *Chrysler Credit Corp. v. Country Chrysler, Inc.,* is also distinguishable from the case now before us. In *Chrysler,* the court noted in dicta that both parties had taken inconsistent positions with respect to a jurisdictional issue. 928 F.2d at 1520 n. 10. The court stated that it did not recognize the doctrine of judicial estoppel, and that it had an independent duty to inquire into its own jurisdiction, notwithstanding the failure of the parties to properly advance their arguments. *Id.*

Like *49.01 Acres of Land II, Chrysler* involved the parties' inconsistent positions as to the applicable law in the case, not the facts of the case. Furthermore, *Chrysler* is distinguishable from the instant case, in that *both* parties in *Chrysler* asserted inconsistent positions. Certainly, it would be difficult for a court to estop *both* parties in a litigation from propounding inconsistent positions. In any event, the court in *Chrysler* was not called upon to apply the doctrine of judicial estoppel.

The Tenth Circuit hinted in a more recent decision that it might be willing to revisit its stance on judicial estoppel. In *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9,* 10 F.3d 700 (10th Cir.1993), *reh'g en banc granted,* 39 F.3d 1078 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995), the court stated that "[w]ithout deciding whether the [judicial estoppel] doctrine applies in the Tenth Circuit," the criteria of the doctrine were not satisfied in that case because the party against whom estoppel was sought had not prevailed earlier. *Id.* at 716. The Tenth Circuit has also approved the doctrine of "quasi-estoppel," which "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *In re Sampson,* 997 F.2d 717, 724–25

n. 6 (10th Cir.1993). Furthermore, the plaintiff in this case may be precluded, independent of any estoppel doctrine, from arguing "whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change." *See* Moore, *supra* (citing *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953); *County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290 (4th Cir.1987); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir.1982)). The court finds it unnecessary to apply judicial estoppel or any related doctrine, however, in that the plaintiff has failed to state a prima facie case for relief under the ADA.

As noted above, the plaintiff in an ADA case must establish that "he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job." *White*, 45 F.3d at 360. Mr. Smith was unable because of his disability to return to his job as an assembler, the job which he held at the time he was taken off work by his treating physician on May 5, 1992. The plaintiff does not allege that he could have performed his job as an assembler, with or without an accommodation, at the time of his termination on March 3, 1993. The plaintiff claims, however, that he was able to perform the essential functions of various other vacant positions at Midland Brake, but that the defendant refused to place him in any of these positions.

█ Mr. Smith was not released by his physician to return to any job at Midland Brake from July 26, 1992, the effective date of the ADA, through his termination on March 3, 1993. *See* Americans with Disabilities Act, Pub.L. No. 101–336, § 108, 104 Stat. 328 (1990).[2] The plaintiff also does not dispute that in October 1992, Midland Brake sought, unsuccessfully, a medical release for the plaintiff to return to work doing data entry. The plaintiff identifies, however, several other jobs which he alleges his physician would have released him to try had he and

his physician been aware the jobs were available.

Some courts have held that while reasonable accommodation *may* include reassigning an employee to a different position, "the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir.1995); *see also* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii). In *Dyer v. Jefferson County Sch. Dist. R–1*, 905 F.Supp. 864 (D.Colo.1995), the plaintiff admitted that she was not physically capable of performing her job of assessment psychologist, with or without reasonable accommodation. *Id.* at 869. The plaintiff requested transfer to a school psychologist position, claiming that she could perform the duties of that job. *Id.* at 868. The court held that the defendant was not obligated to transfer the plaintiff, reasoning that because the plaintiff could not perform the essential functions of the job she held when the dispute arose, she was not a "qualified individual" within the meaning of the ADA. *Id.* at 869.

█ The United States Supreme Court stated in *School Board v. Arline* that an employer is "not required to find another job for an employee who is not qualified for the job" he is doing. 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) (construing section 504 of the Rehabilitation Act of 1973). An employer cannot, however, "deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Id.* at 289 n. 19, 107 S.Ct. at 1131 n. 19. The court in *Guillot v. Garrett*, 970 F.2d 1320 (4th Cir.1992), interpreted *Arline* in the context of a government employee who was denied security clearance due to his failure to disclose his drug addiction. *Id.* at 1321. The Fourth Circuit held that while an employer may not forbid an employee who is not qualified for the position he currently holds from

---

**2.** The ADA does not apply retroactively. *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 894 F.Supp. 1463, 1467 (D.Kan.1995). The court thus will only consider the plaintiff's claims to the extent that they involve conduct occurring subsequent to the ADA's effective date. *See Larkins v. CIBA Vision Corp.*, 858 F.Supp. 1572, 1579 (N.D.Ga. 1994).

availing himself of other employment opportunities, an employer is not required as a matter of reasonable accommodation to transfer such an employee. *Id.* at 1327. The court examined 29 C.F.R. § 1613.702(f), which defines a "qualified handicapped person" as "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question." *Id.* The court interpreted the phrase "the position in question" to refer to the position which a plaintiff currently holds. *Id.* Because security clearance was a requirement of the position from which the plaintiff was terminated, no amount of accommodation would render the plaintiff able to "perform the essential functions of the position in question," and thus the plaintiff was not a qualified individual within the meaning of the EEOC regulation. *Id.*

■ Under *Guillot*, Mr. Smith would not be a qualified individual with a disability, because he could not perform the essential functions of the position from which he was terminated. Consequently, the plaintiff would fail to establish a prima facie case of discrimination under the ADA. Nevertheless, because EEOC guidelines provide that reassignment to a vacant position is a potential reasonable accommodation, we shall examine whether the plaintiff has produced evidence sufficient to make a facial showing that he could have been accommodated by means of a transfer to a different job. 29 C.F.R. pt. 1630 app. § 1630.2(*o*); *see also Lawrence v. IBP, Inc.,* 1995 WL 261144, 4 Am.Disability Cas. 632, at *6 (D.Kan. Apr. 21, 1995).

In the instant case, the plaintiff's treating physician completed a number of "Employers Referral and Treatment Authorization" forms following his visits with the plaintiff. The forms contained a choice of three statements as to the patient's ability to return to work: "return to full work," "return to modified work," and "unable to work." Following the three selections was a space in which the physician could specify "restrictions if any." From the time Dr. Singer removed the plaintiff from duty on May 5, 1992, through his last visit with the plaintiff on October 19, 1992, Dr. Singer either failed to check any of the three options, or checked "unable to work," and never did Dr. Singer specify any work restrictions which would have enabled the plaintiff to return to work. The plaintiff has failed to provide any evidence that he was released to return to work by any other physician subsequent to October 19, 1992. The plaintiff contends that, nevertheless, there were jobs at Midland Brake which he could have performed through the date of his termination, and that his physician would have released him to these jobs had he been made aware of them.

■ The cases interpreting the ADA "do not clearly address when a plaintiff is required to suggest possible reasonable accommodations. However, what is clear is that plaintiff bears the initial burden to present a prima facie case." *Lawrence,* 1995 WL 261144, at *7 (citation omitted). EEOC guidelines provide as follows:

> Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability.

29 C.F.R. pt. 1630 app. § 1630.9. Thus, an employer is not solely responsible for identifying a reasonable accommodation.

■ An employer may not forbid a disabled employee who is not qualified for the position he currently holds from availing himself of other employment opportunities. *See Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19; *Guillot,* 970 F.2d at 1327. We refuse to hold, however, that the ADA places upon an employer the affirmative duty to seek out a release for an employee who has previously been taken off work by his physician.

In light of the plaintiff's representations to the SSA that he was totally disabled and unable to work, and the fact that the plaintiff never provided Midland Brake with a medical release for him to return to work, in any capacity, from July 26, 1992, through his termination on March 3, 1993, we conclude

that no reasonable jury could find that Mr. Smith was a qualified individual with a disability under the ADA. We therefore grant the defendant's motion for summary judgment as to the plaintiff's ADA claim.

**B. *ADEA Claim***

■ In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must show that "(1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged despite the adequacy of his work, and (4) his position was filled by a person younger than he." *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986).

■ It is uncontroverted that the plaintiff was taken off work by his treating physician on May 5, 1992. The plaintiff also does not dispute that he was physically unable to return to his current job at the time he was discharged on March 3, 1993. Consequently, the plaintiff cannot claim that he was doing satisfactory work and was discharged despite the adequacy of his work. Unlike the ADA, the ADEA does not require an employer to attempt to accommodate an employee who is unable to perform the essential functions of his position. We therefore hold that there exists no genuine issue of material fact as to the plaintiff's ADEA claim, and that the defendant is entitled to judgment on that claim as a matter of law.

**C. *KAAD/KADEA Claims***

The plaintiff has requested that the court dismiss his KAAD and KADEA claims, and does not dispute the defendant's arguments regarding summary judgment on these claims. The court therefore grants the defendant's motion for summary judgment on the plaintiff's KAAD and KADEA claims.

**D. *Retaliatory discharge claim***

■ Kansas generally follows the employment at will doctrine. *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 846 (1987). Absent a contract to the contrary, a person's employment is considered terminable at the will of either the employer or the employee. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779, 781 (1976). Kansas recognizes, however, certain exceptions to the general rule of employment at will. One such exception prohibits employers from discharging employees for exercising their rights under the Kansas Workers Compensation Act. *Murphy v. City of Topeka*, 6 Kan.App.2d 488, 630 P.2d 186, 193 (1981).

■ In order to establish a prima facie case of retaliatory discharge, a plaintiff must show that (1) he filed a claim for workers compensation benefits, or sustained an injury for which he might assert a claim for such benefits; (2) his employer had knowledge of the claim, or of the fact that he had sustained a work-related injury for which he might file a claim; (3) his employer terminated his employment; and (4) a causal connection existed between the protected activity or injury and the termination. *Ortega v. IBP, Inc.*, 1994 WL 373887, at *6 (D.Kan. July 1, 1994).

■ An employer, however, "has no duty to ... retain an employee who cannot do the work the employer has available." *Rowland v. Val–Agri, Inc.*, 13 Kan.App.2d 149, 766 P.2d 819, 821 (1988). As discussed above, the plaintiff represented to the SSA that he was totally disabled and unable to work. Furthermore, the plaintiff had not been released to return to work in any capacity at Midland Brake at the time the defendant terminated his employment. Because no reasonable jury could find on these facts that the plaintiff was discharged in retaliation for exercising his rights under the Workers Compensation Act, the defendant is entitled to summary judgment on the plaintiff's last remaining claim.

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant's motion for summary judgment (Doc. 64) is granted.

**IT IS FURTHER ORDERED** that the plaintiff's motion in limine (Doc. 61) is denied as moot.