**Cheryl A. HIEBERT, Plaintiff,**

v.

**IFR SYSTEMS, INC., Defendant.**

**No. 95–1319–KMH.**

United States District Court,
D. Kansas.

April 10, 1997.

Alan D. Herman, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Plaintiff.

Wyatt Wright, Boyd A. Byers, Foulston & Siefkin L.L.P., Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

HUMPHREYS, United States Magistrate Judge.

Plaintiff has filed claims that defendant violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Kansas Act Against Discrimination (KAAD), K.S.A. § 44–1001 *et seq.*, by its refusal to reasonably accommodate her disability and by terminating her employment. Plaintiff has also claimed that defendant retaliated against her for filing a workers' compensation claim.

This matter is presently before the court on defendant's motion for summary judgment (Doc. # 51). The parties consented to the court's exercise of jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons set forth below, the court grants the motion in its entirety as to all claims.

### Factual Background

The following facts are uncontroverted, or where properly controverted, construed in the manner most favorable to the plaintiff as the nonmoving party. However, the court has not addressed factual allegations submitted by the parties which are not material to this ruling. Neither has the court considered the factual allegations which are not properly supported by deposition testimony, exhibits and affidavits.

IFR Systems, Inc. (IFR), a corporation involved in the manufacture and repair of electronics, hired plaintiff as an electronic technician in 1984. After two years, plaintiff advanced to the position of "electronics technician 2", a position she held until her termination on September 29, 1993. The primary function of an electronics technician is to calibrate, troubleshoot and repair electronic modules, computer boards and assemblies. The technician utilizes a broad range of electronic testing and measuring equipment and must be able to read and interpret schematics, blueprints and other technical documents. The position requires the use of assorted hand tools and soldering equipment and also requires repetitive gripping, pushing, pulling, twisting and lifting.

In early 1992, plaintiff began experiencing pain in her left elbow while working on electronic components. She ultimately filed an employee accident report complaining that the pain in her elbow had increased to the point where her fingers were numb and her ability to grip had diminished. Upon receipt of the accident report, IFR immediately took plaintiff off work pending a medical evaluation.

Subsequently, plaintiff was examined by several doctors. Nerve conduction studies showed carpal tunnel syndrome in plaintiff's left wrist and cubital tunnel syndrome of the left elbow. Dr. Pollock, plaintiff's treating physician, attributed these problems to repetitive overuse of plaintiff's left hand and arm and directed that plaintiff remain off work while she was treated with physical therapy and medication. Because her condition did not respond to this conservative treatment, Dr. Pollock surgically released the carpal tunnel in her left wrist and ulnar nerve in her left elbow.

Plaintiff was off work from March 16 until July 1, 1992. During that time, plaintiff applied for and received workers compensation benefits for temporary total disability. Plaintiff was represented by an attorney in pursuing her workers compensation claim. On the advice of her counsel, plaintiff created and kept a private, detailed journal about her injury and employment.

Dr. Pollock released plaintiff to return to work with the following restrictions: plaintiff could answer the phone and troubleshoot for

one-half day, perform diagnostic testing on equipment for one-fourth day, and monitor readings for the remaining one-fourth of the day. Dr. Pollock also restricted lifting with her left arm to ten pounds and limited the left arm rotation to six times per hour.

Plaintiff's problems with her left arm continued and she also began experiencing pain in her *right* wrist and elbow while working. Additional nerve conduction studies were conducted on plaintiff's right wrist and, once again, the studies were positive for carpal tunnel syndrome and ulna nerve entrapment. In light of those test results and the fact that plaintiff's problems were now bilateral, Dr. Pollock modified her restrictions to "off work or no screwdriver, pliers, etc. no repetitive squeezing, pushing, lifting with hands."

IFR accepted these restrictions and allowed plaintiff to work in the customer service office answering phones and filing papers. On October 27, 1992, plaintiff filed another employee's accident report, disclosing for the first time that she had injured her back at work eight months earlier and that this back injury had recently been aggravated by stooping and bending to file papers.

On November 9, 1992, plaintiff filed a workers compensation claim for her alleged back injury and on December 21, 1992 she also filed a claim for injury to her right hand and shoulder. Plaintiff was represented again by her previous counsel on the two new workers compensation claims. Despite the medical restrictions and the filing of the new workers compensation claims, plaintiff continued to work in the customer service office.

Dr. Pollock examined plaintiff at regular monthly intervals. On Friday, April 23, 1993, he gave plaintiff a doctor's statement with the following restrictions: "no use of hand tools, no vibratory tools." Plaintiff returned to Dr. Pollock on the following Monday, April 26, and was given the additional restrictions: "Concerning her back—should avoid bending, lifting, twisting, no more than thirty-five pounds lifting and to avoid bending more than six times per hour." For purposes of this motion, the parties agree that those restrictions are permanent and that plaintiff is also restricted to "no repetitive use of hands."

Plaintiff provided those restrictions to Margo Jeffries, customer service office supervisor, and told Jeffries that filing papers aggravated her back injury, although plaintiff said she "could do it on a lesser amount." Upon receipt of plaintiff's most recent medical restrictions and her comments on the aggravation of her back injury from filing papers, IFR placed plaintiff on a medical leave of absence effective May 3, 1993.

On May 6, 1993, plaintiff, through her attorney, filed an application with the Kansas Division of Workers' Compensation asserting she was entitled to temporary total disability compensation, medical treatment and vocational rehabilitation. Following a hearing, the state administrative law judge (ALJ) ordered IFR to pay temporary total disability compensation from April 30, 1993 until such time as plaintiff was "released to any substantial or gainful employment."

Dr. Pollock referred plaintiff to Dr. Morris, a hand specialist, for a second opinion and additional treatment in May 1993. Dr. Morris noted that plaintiff was off work and permitted plaintiff to remain in that status while undergoing physical therapy. Ultimately, Dr. Morris gave plaintiff permanent restrictions to "limit repetitive activities to an occasional basis" and "minimal gripping, grasping and fine manipulations." Plaintiff provided those restrictions to IFR on August 27, 1993.

On September 30, 1993, IFR advised plaintiff that her temporary total disability benefits would terminate and that she would be terminated because there were no open positions in which she could perform the essential functions with or without reasonable accommodation. Plaintiff's counsel immediately filed for a statutory penalty against IFR under workers compensation law, asserting that plaintiff was still temporarily totally disabled and that she "had been released with such stringent work restrictions that respondent had refused to accommodate her and she was not physically able to find gainful or substantial employment without retraining." After a hearing, the ALJ ordered IFR to continue to pay temporary total disability compensation until October

20, 1993, the scheduled date for a settlement conference on the workers compensation claims.

The settlement conference conducted on October 20, 1993 resulted in a settlement and IFR's workers compensation carrier agreed to pay a lump sum award of $30,000 to settle all claims arising out of plaintiff's injuries that were subject to her workers compensation claims. This amount was in addition to the $11,664 already paid to plaintiff for temporary total disability and $17,482 for medical expenses. The agreement was conditioned upon approval by the Division of Workers' Compensation at a hearing on November 4, 1993.

On October 21, 1993, one day after the agreement to settle her workers compensation claims, plaintiff prepared a Kansas Human Rights Commission (KHRC) intake form with the assistance of her attorney in the present action. Plaintiff filed her administrative claim of disability discrimination on November 11, 1993, seven days after the Division of Workers' Compensation approved her settlement agreement.

On the same day that plaintiff drafted her disability discrimination complaint, she also went to the Social Security Administration office to inquire about disability benefits. In followup, a social security worker telephonically interviewed plaintiff and obtained information for a disability benefit application. The completed, unsigned application, related forms, and instructional letter were then mailed to plaintiff on November 15, 1993. Plaintiff's social security application stated in part:

I became unable to work because of my disabling condition on April 30, 1993.

I am still disabled.

. . . . .

I agree to notify the Social Security Administration if:

— my medical condition improves so that I would be able to work even though I have not yet returned to work.

. . . . .

My disability began to bother me in 1992, but I felt like I could continue to work until April 30, 1993 when my disability made me stop working.

I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

Plaintiff reviewed and signed the application on November 24, 1993 without amending it.

Plaintiff also submitted a form entitled "Activities and Daily Living" which stated:

I do none of the cleaning, washing, house or yard work. . . . I am not able to clean the house because my hands sting and swell up, I only have four pounds of grip in each hand and I can't hold on to the vacuum, sweeper or duster. I can't stand and bend to clean floors or to take out trash.

On the same form, plaintiff wrote that she no longer drove because "it's too painful to sit" and that she needed assistance to comb her hair because of difficulty holding the comb.

Finally, plaintiff completed and submitted a pain questionnaire. When asked if there were any activities she was able to do in the past, but now must avoid, plaintiff responded: "Climbing stairs, repetitive stooping, bending, sitting too long, especially in cars; cleaning at five minute intervals only, cooking; washing clothes, button buttons; no hand tool work with any fine manipulations are possible; child care." Plaintiff also stated she experienced "severe" pain when bending her wrists or writing. Plaintiff added that her back pain was aggravated by bending or staying in one position too long and that "the pain level increases to the point that I have to stop doing whatever I'm doing."

In response to the question of how her condition kept her from working, plaintiff answered "pain, loss of grip 4–8 pounds, no ability of fine manipulations, my doctor's restrictions say no bending more than six times an hour and no repetitive movements, no cold environments, no pushing or pulling, no prolonged standing or writing."

On March 16, 1994, the Social Security Administration denied plaintiff's application for disability. Plaintiff filed no appeal from that decision.

### Summary Judgment Standard

The court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is "genuine" when the evidence is such that a reasonable jury could find for the non-movant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l. Lab*, 992 F.2d 1033, 1036 (10th Cir.1993). This burden may be discharged by showing there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-movant must go beyond the pleadings and, by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56 requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. Moreover, a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

The court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs a threshold inquiry determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

### Discussion

#### I. Disability Discrimination

Defendant's motion for summary judgment is directed to several narrow issues concerning plaintiff's applications for disability benefits under workers compensation and social security laws at or about the time that plaintiff's employment at IFR was terminated. IFR contends that plaintiff's pursuit of disability benefits precludes her from bringing this action under the ADA.[1] Both parties agree that the interests of judicial economy are best served by addressing this threshold issue before proceeding with further discovery.[2]

■ The ADA prohibits discrimination against persons with disabilities. To qualify for relief under the ADA, a plaintiff claiming wrongful termination must establish:

---

1. Plaintiff's claim under KAAD is based upon the same theory and set of facts supporting her ADA claim.

2. Although plaintiff expressly requested a ruling on the narrow issue of plaintiff's application for disability benefits, plaintiff's response contains a lengthy presentation of factual assertions which are irrelevant to the issue before the court. The court has limited its analysis to the facts concerning plaintiff's disability applications.

(1) that she is a disabled person within the meaning of the ADA;

(2) that she is qualified, that is with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and

(3) that the employer terminated her because of her disability.

*White v. York Int'l. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

■ In moving for summary judgment, IFR asserts that plaintiff's claim fails for lack of a genuine factual issue on an essential element of plaintiff's claim. Specifically, IFR argues that plaintiff is estopped from claiming that "with or without reasonable accommodation, she is able to perform the essential functions of the job" based upon: (1) her application and receipt of temporary total disability benefits under the Workers Compensation Act and (2) her application for social security disability benefits.

Although the 10th Circuit has not addressed the issue of estoppel in this specific context, courts in this district have consistently held that where an employee represents that she is unable to work in order to receive social security and workers compensation benefits for total disability, she is precluded from subsequently claiming that she should have been accommodated under the ADA. *See, Trotter v. B&S Aircraft Parts & Accessories, Inc.,* 1996 WL 473837 (D.Kan. 1996) (Theis, J.); *Aramburu v. Boeing Co.,* 911 F.Supp. 1377 (D.Kan.1995) (Crow, J.); *Smith v. Midland Brake, Inc.,* 911 F.Supp. 1351 (D.Kan.1995) (Saffels, J.); *Lamury v. Boeing Co.,* 1995 WL 643835 (D.Kan.1995) (Kelly, J.); *Ricks v. Xerox,* 877 F.Supp. 1468, 1477 n. 9 (D.Kan.1995) (Lungstrom, J.); *Garcia–Paz v. Swift Textiles,* 873 F.Supp. 547 (D.Kan.1995) (Vratil, J.). These holdings are based on judicial estoppel and related doctrines which preclude a plaintiff from "speaking out of both sides of [her] mouth." *Reigel v. Kaiser Foundation Health Plan of North Carolina,* 859 F.Supp. 963 (E.D.N.C.1994). The plaintiff cannot simultaneously be unable to work *and* able to perform the duties of her position. *Trotter v. B&S. Aircraft Parts & Accessories, Inc.,* 1996 WL 473837 (D.Kan. 1996). The majority of circuit courts which have considered this issue have reached a similar conclusion. *See, e.g., McNemar v. Disney Store,* 91 F.3d 610 (3rd Cir.1996); *August v. Offices Unlimited, Inc.,* 981 F.2d 576 (1st Cir.1992); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768 (8th Cir. 1987). *But see, Overton v. Reilly,* 977 F.2d 1190 (7th Cir.1992).

Here, with the assistance of an attorney, plaintiff applied for and received temporary total disability benefits through her workers compensation claims. Under Kansas law, temporary total disability exists when the employee, on account of an injury at work, has been rendered "completely and temporarily incapable of engaging in any type of substantial and gainful employment." K.S.A. § 44–510c(b)(2). Similarly, plaintiff represented to the Social Security Administration that she was disabled and provided substantial detail concerning her limitations and impairments.

To avoid the consequences of those earlier disability claims, plaintiff now argues that she was forced to apply for disability benefits because IFR refused to accommodate her disability. Assuming arguendo that IFR failed to accommodate her, plaintiff's remedy was to initiate an ADA action, rather than claim disability to secure benefits from another source. "The fact that the choice between obtaining federal or state benefits and suing under the ADA is difficult does not entitle one to make false representations with impunity." *McNemar v. Disney Store, Inc.,* 91 F.3d 610, 620 (3rd Cir.1996).

■ Plaintiff also argues estoppel should not apply because she pursued disability benefits under mistaken factual impressions and was unaware of the potential legal ramifications of filing inconsistent disability applications. These arguments are not persuasive because plaintiff had legal counsel in pursuing her workers compensation claims and even created a journal in anticipation of future litigation.[3] Additionally, plaintiff's ap-

---

3. Although the court is sympathetic to plaintiff's injuries, this case illustrates a troublesome pat-

plication for social security benefits unequivocally stated that she was disabled and that she would notify the agency if she became able to work. Plaintiff never notified the Social Security Administration that she was able to work. Instead, she proceeded to an administrative determination while simultaneously pursuing her ADA claim. This is the very conduct which courts have expressly rejected: plaintiff cannot claim that she is capable of work while simultaneously representing that she is unable to work. Defendant's motion for summary judgment on plaintiff's ADA claim shall be granted.[4]

## II. Retaliation

 IFR also moves for summary judgment on plaintiff's pendent state law claim of retaliation for filing a workers compensation claim. IFR argues that plaintiff was terminated because she was physically unable to perform any available job at IFR and should be estopped from arguing otherwise.

In Kansas, an employee can bring an action for retaliatory discharge if the employer discharges the employee in retaliation for filing a workers compensation claim. *Murphy v. City of Topeka–Shawnee County Dept. of Labor Services,* 6 Kan.App.2d 488, 630 P.2d 186 (1981). A Kansas employer, however, is not forced to retain an employee who, because of the work-related injury, is physically unable to perform any available job for the employer. *Rowland v. Val–Agri., Inc.* 13 Kan.App.2d 149, 766 P.2d 819 (1988). IFR contends that plaintiff represented in her social security application that she was disabled and is therefore precluded from alleging in this case that she was capable of working for IFR.

Plaintiff vigorously objects to the application of estoppel to this claim. However, the doctrine of estoppel discussed above in the context of an ADA claim is equally applicable to the retaliation cause of action as well.

Plaintiff cannot claim ability to work while at the same time representing disability for purposes of social security. *Smith v. Midland Brake, Inc.,* 911 F.Supp. 1351 (D.Kan. 1995). Summary judgment on plaintiff's claim of retaliation for filing a workers compensation claim will also be granted.

***IT IS THEREFORE ORDERED*** that defendant's motion for summary judgment (Doc. # 51) is GRANTED and plaintiff's claims are hereby dismissed.

---

tern reflected in certain cases brought under the ADA. First, the employee presents a severe and disabling injury in a workers compensation proceeding. Next, the employee seeks total disability benefits from private insurance or social security. Finally, after exhausting those avenues of recovery, the employee turns to the employer with an ADA claim, asserting he or she can work.

4. This holding also resolves plaintiff's KAAD claim. When a state law claim is based on the same theory as a rejected federal claim, a court may dispose of the state law claim on the same grounds. *See, McDonald v. Dept. of Corrections,* 880 F.Supp. 1416, 1424 (D.Kan.1995).